# MARCH, 1912.

### ENNIS WATER WORKS V. CITY OF ENNIS.

#### No. 2286.   Decided March 13, 1912.

#### 1.—Contract—Rules of Construction.

The rules are recognized that, where a contract is capable of two constructions, one of which places it in opposition to and the other in harmony with the Constitution, the latter should be adopted; and that grants of public rights by municipalities to individuals are to be strictly construed in favor of the public as against the individual, and an exclusive grant will not be implied unless given by express terms or by clear implication.   (P. 72.)

#### 2.—City—Contract—Water Company—Exclusive Rights—Monopoly—Constitution.

A contract which is by its terms necessarily exclusive, by which a city grants to a water company for the term of thirty years the right to supply the city and its inhabitants with water, with no power in the city to grant to others the right to compete, or to exercise its own right to furnish water for its own use and that of its citizens, is repugnant to the constitutional provision prohibiting perpetuities and monopolies.   Const., art. 1, sec. 26.   (P. 72.)

#### 3.—Same—Exclusive Contract.

Though the grant of the right to lay water mains in the streets and alleys of a city be held not an exclusive one, a grant in connection therewith, for thirty years, of "the right and privilege to supply the city and its inhabitants with water for domestic and other uses and for the purpose of extinguishing and preventing fires" necessarily implies an exclusive right.   A grant was necessary to give the right to lay mains, but not to give the mere right to sell water, which every one possessed, and which, unless exclusive, was meaningless. (Pp. 73, 74.)

#### 4.—Cases Discussed.

City of Brenham v. Brenham Water Works Co., 67 Texas, 542, approved and followed.   Bartholomew v. City of Austin, 29 C. C. A., 568, criticised.   Walla Walla v. Walla Walla Water Co., 172 U. S., distinguished.   (Pp. 73, 75, 76.)

Error to the Court of Civil Appeals for the Fifth District, in an appeal from Ellis County.

The City of Ennis sued the Ennis Water Works, a corporation, and had judgment.   It was affirmed on appeal by defendant, who thereupon obtained writ of error.

*G. C. Groce,* for plaintiff in error.—When a statute, ordinance or contract is subject to or admits of two constructions, one of which will render it unconstitutional and void, and the other not, such construction will be given to it as will make it in accordance with the Constitution, for it must be presumed that the parties in interest did not intend to violate the Constitution or to do a vain thing.   State v. G. H. & S. A. Ry. Co., 100 Texas, 153; Tex. Central R. R. Co. v.

Marrs, 100 Texas, 530; Morgan Bros. v. M. K. & T. Ry. Co. of Texas, 50 Texas Civ. App., 420; Caldwell v. May's Landing Water Power Co., 19 N. J. Eq., 249; Atlantic City Water Co. v. Consumers' Water Co., 44 N. J. Eq. 437.

It is a further well settled rule of construction that grants of franchises from municipalities are to be strictly construed in favor of the public, and such grants are not to be held exclusive unless they are clearly so, and under these rules the ordinance and contract herein in issue did not confer exclusive rights on Morrison and his assigns. City of Walla Walla v. Walla Walla Water Co., 172 U. S., 1; Bartholomew v. City of Austin, 29 C. C. A., 568; Cunningham v. City of Cleveland, 39 C. C. A., 211; Long Island Water Supply Co. v. City of Brooklyn, 166 U. S., 685; Water, Light & Gas Co. v. Hutchison, 207 U. S., 385; Little Falls E. & W. Co. v. Little Falls, 102 Fed., 663; In Re Brooklyn, 143 N. Y., 596; Syracuse Water Co. v. City of Syracuse, 116 N. Y., 167; Stein v. Bienville Water Supply Co., 141 U. S., 67-80, 81; Hamilton Gas, Light & Coke Co. v. Hamilton City, 146 U. S., 258; City of Vicksburg v. Vicksburg Water Co., 202 U. S., 553.

Whether the franchise ordinance of March 19, 1909, and the agreement thereunder, herein sought to be avoided, constituted a valid contract between the City of Ennis and A. M. Morrison and his assigns, and whether the ordinances of April 22, 1909, and March 15, 1910, are laws impairing, or attempting to impair, the obligation of such contract, are questions arising under the constitution of the United States, the supreme law of the land, and upon which the Supreme Court of the United States is the court of last resort. It is, we submit, the duty of the State Courts to determine such questions in accordance with the holdings of the Federal Courts, but, however this may be, those courts, should the question be presented to them, will decide them independently, and, indeed, we think have already discredited and repudiated Brenham v. Brenham Water Company, upon which the judgment in this cause is predicated, and have held that language such as was construed in that case, and such as is contained in the franchise ordinance and contract herein in issue, does not confer exclusive privileges. Yick Wo v. Hopkins, 118 U. S., 366; Butz v. City of Muscatine, 8 Wall., 582-3; Hough v. T. & P. Ry. Co., 100 U. S., 226; L. & N. Ry. Co. v. Palmes, 109 U. S., 244; McGahey v. Virginia, 135 U. S., 667; Mobile & Ohio R. R. Co. v. Tennessee, 153 U. S., 486-92; Stearns v. Minnesota, 179 U. S., 223; City of Walla Walla v. Walla Walla Water Co., 172 U. S., 1; Bartholomew v. City of Austin, 29 C. C. A., 568; Cunningham v. City of Cleveland, 39 C. C. A., 211.

Should it be claimed as of any weight that the contract in issue in this case was made after the decision in the Brenham case, we answer that it was also made after the decisions in the Walla Walla, Bartholomew and Cunningham cases, above cited.

*Spence, Knight, Baker & Harris,* for defendant in error.—The franchise ordinance purporting to grant A. M. Morrison exclusive rights for thirty years and the contract to the same effect based

thereon, tended to the creation of an unlawful monopoly and perpetuity and was in violation of the Constitution of Texas, art. 1, sec. 26, and hence void. Brenham v. Brenham Water Co., 67 Texas, 543; Altgelt v. San Antonio, 81 Texas, 448; Austin v. Nalle, 85 Texas, 520; Edwards v. Jennings, 89 Texas, 618; Hartford Ins. Co. v. Houston, 102 Texas, 317; Citizens Co. v. Elwood, 16 N. E., 624; Long v. Duluth, 51 N. E., 913; Westminster Co. v. Westminster, 64 L. R. A., 630; Davenport v. Kleinschmidt, 6 Montana, 502.

MR. JUSTICE DIBRELL delivered the opinion of the court.

This suit was instituted by the City of Ennis, a municipal corporation, on May 19, 1909, against Ennis Water Works, a private corporation, and A. M. Morrison, a citizen of Ellis county, to cancel and annul a certain contract, ordinance and franchise entered into and granted on March 19, 1900, by the City of Ennis with and to the defendant, Morrison, who transferred all his rights under said contract, ordinance and franchise grant to his co-defendant, Ennis Water Works, and to cancel and annul all subsequent ordinances and contracts entered into by said city with either of said defendants. The contract sought to be cancelled and annulled pertained to a water works system for said city and its citizens, and the action was, in addition to such cancellation and annulment, to require the defendants within a reasonable time to remove their service pipes from the public streets, alleys and highways of the City of Ennis, and to vacate their use of the city's property, streets, alleys and highways, and to require the defendant, Ennis Water Works, for a reasonable time after such final decree, in case the city resumed its possession of the service pipes in use by it in its service to its own citizens, to render the water service essential to the health and safety of the inhabitants of the City of Ennis, pending the completion by the city of its municipal water plant in course of construction.

The grounds upon which the City of Ennis based its action, seeking to cancel and annul the contract entered into with the defendant Morrison and by him assigned to the defendant Ennis Water Works, in addition to the alleged failure to comply with certain conditions of the contract and a partial abandonment of it by defendants, are summarized in plaintiff's amended petition upon which the trial proceeded, as follows:

"a. Because the City of Ennis was without lawful authority to grant unto the said A. M. Morrison a franchise of the tenor described having duration of thirty years, such duration being unreasonable, tending to create a perpetuity and embarrass the City of Ennis in the exercise of its governmental and municipal functions.

"b. The City of Ennis was without authority to grant a franchise of the tenor set forth, purporting to lease public property to a private individual for private gain, and purporting to grant to such private individuals for private gain easements in and upon the public property, streets, alleys and highways of the city of Ennis.

"c. The City of Ennis was without authority to grant a franchise of the tenor described, because same purports to create in the grantee a monopoly, perpetuity, and exclusive and uncontrollable right, privi-

lege and benefit, contrary to the inhibition contained in article I, section 26, of the Constitution of the State of Texas, which provides 'Perpetuities and monopolies are contrary to the genius of free government, and shall never be allowed,' and contrary to article I, section 3 of said Constitution.

"d. The City of Ennis was without authority to grant a franchise of the tenor described, for that same creates, or tends to create, a monopoly and a perpetuity, a grant of unreasonable duration, and one unreasonable, prejudicial and hampering the City of Ennis in the exercise of the functions imposed upon it by law for the benefit of its inhabitants.

"e. The City of Ennis was without authority to enter into the alleged contract, because same constituted an attempt on the part of the city to surrender and barter away, and on the part of the said Morrison to obstruct, the legislative discretion imposed by law upon the city for the benefit of its inhabitants.

"f. The city was without lawful authority to grant a franchise of the tenor described, because the same would have the necessary effect of limiting the legislative authority and discretion of succeeding lawmaking bodies of the City of Ennis, and embarrassing them in the exercise of that discretion which by law is imposed upon the lawmaking bodies of such municipalities."

The defendant Ennis Water Works answered by general demurrer, special exceptions, general denial and certain special pleas to show the contract valid. In addition to the foregoing pleas, said defendant pleaded in reconvention the indebtedness of the City of Ennis to it for services performed under the contract and accepted by said city in the sum of $1,031.00, for which judgment was asked. The defendant Morrison disclaimed any interest under the alleged contract further than as a stockholder in said Ennis Water Works.

The cause was submitted to the court without a jury and judgment rendered for the City of Ennis, cancelling and annulling the contract, together with the grant of franchise and all rights accorded thereby, and a recovery of all the property held by defendant belonging to the City of Ennis, together with the possession of all streets, alleys and highways, lakes and water mains, etc., and in favor of the defendant, Ennis Water Works, against the City of Ennis, for $1,050.00. The judgment, in addition to making proper provision for the removal of the property owned by the Ennis Water Works, contained the following provisions:

"During the time of suspension of process under this decree as above provided, the present temporary possession and use by the City of Ennis of that portion of the water supply system of the defendant corporation now in use by the city and necessary to supply the public with water and to prevent fires, may continue upon condition that the City of Ennis pay to defendant, Ennis Water Works, monthly, or into the registry of this court for its use, the reasonable value of the use of same, to-wit, the sum of $125.00."

The cause was dismissed as to the defendant, Morrison, upon his disclaimer.

Upon appeal to the Court of Civil Appeals of the Fifth District, the judgment of the trial court was on March 25, 1911, affirmed.

The trial court found the following facts, which were adopted by the Court of Civil Appeals and about which there seems to be no contention:

"1.   That on March 19, 1900, the City of Ennis was, and for years prior thereto had been, a duly incorporated city and municipal corporation, located in Ellis County, Texas, and incorporated as a city under the general laws of this State, and on and prior to that date was exercising its corporate functions in the territorial area authorized by its act of incorporation, and that on that date it had and still has a population exceeding 5,000 inhabitants and a corporate area of several square miles; that within its limits are the lines of two systems of railway, namely, the Houston & Texas Central Railway and the Texas Midland Railway Company, and divers cotton gins, an oil mill, divers banks, mercantile establishments, homes, hotels and other public institutions.

"2.   That on March 19, 1900, the City of Ennis owned and ever since has owned two large reservoir sites and lakes of empounded water, together with land pertaining thereto, which will be hereafter referred to as the 'new lake' and the 'old lake,' and at the same time the said city owned and still owns about 8,000 feet of valuable cast-iron, 8-inch water main, which connected said 'new lake' with a distribution system in said city, then owned by defendant, A. M. Morrison.   And on said day of March, 1900, the water supply of said City of Ennis and its inhabitants and industries, including divers railways, cotton gins and oil mills, business houses, residences and other institutions of the city, was being taken from the reservoirs above mentioned and distributed through said distribution system owned by said Morrison, and said lakes and mains were then and are now worth $10,000.00.

"3.   That on March 19, 1900, the then city council of the City of Ennis passed an ordinance purporting to give and grant unto defendant, A. M. Morrison, his heirs and assigns, for a term of 30 years, the right and privilege to supply the City of Ennis and the inhabitants thereof, and for territory adjacent thereto, with water for domestic and other uses, and for preventing and extinguishing fires, under certain terms, conditions and limitations, in such ordinance set out, and by such ordinance the mayor and the city secretary of said city were authorized and directed to enter into a contract with said Morrison, according to the terms of said ordinance if accepted by him, and to sign and acknowledge such papers and documents as might be necessary to perfect and carry out such contract.   I further find that said A. M. Morrison accepted the terms and conditions of the ordinance above mentioned, and that on the 22nd day of March, 1900, he, for himself, and Charles B. Lewis, mayor of the City of Ennis, and C. M. Banner, secretary of said city, for and on behalf of said city, entered into a contract in accordance with the terms and conditions of said ordinance.

"4.   I further find that immediately following the execution of the contract above mentioned the defendant, Morrison, proceeded

thereunder to furnish water to the City of Ennis, its inhabitants, and the inhabitants of the vicinity of said city, and located upon the lands of the city divers structures, pumping plants, engine rooms, etc., the water furnished by him being taken from the above mentioned lakes or reservoirs belonging to the City of Ennis, and that he continued thus to furnish water to said city, its inhabitants, and the inhabitants of the vicinity, until about the 4th day of February, 1901, when, by deed of that date, he assigned to the defendant, Ennis Water Works, a corporation duly incorporated under the laws of this State, all of his rights under the ordinance and contract above mentioned, together with the physical properties which he had erected for use in connection with such contract, and his distribution plant through which such water was being supplied, and since such assignment, said Ennis Water Works has been furnishing to said City of Ennis, its inhabitants, and the inhabitants of adjacent territory, water from said lakes, claiming the right to do so as assignee of said Morrison, of his rights under the contract and franchise ordinance hereinabove mentioned, and claiming no other right to do so, and said Ennis Water Works was so acting and so furnished water when this suit was instituted on, to-wit, the 19th day of May, 1909.

"5.   I further find that on April 22, 1909, the City of Ennis passed the ordinance which in substance declared null, void and forfeited, the rights and franchises undertaken to be conferred upon A. M. Morrison and his assigns by the franchise ordinance of March 19, 1900, above spoken of, and the above mentioned contract entered into under the same, claiming that the rights attempted to be conferred by such franchise ordinance and contract were illegal, and without authority of law, and contrary to the Constitution and the Laws of this State, and also that such rights had been forfeited because of alleged non-user and mis-user.

"6.   I further find that on the 15th day of March, 1910, the City of Ennis, through its city council, enacted a further ordinance declaring, in substance, that all the franchises and rights claimed by defendant herein, A. M. Morrison, and Ennis Water Works, or either of them, as original grantees, or assignees under any ordinance, resolution, or other acts of said city council, or supposed authority of any contract or purported contract, based thereon, were illegal, without authority, and contrary to the Constitution and of the laws of this State, and were forfeited for misconduct and mis-user, etc.

"7.   I further find that, some time before the institution of this suit, the city of Ennis began the construction of a system of water works of its own, in the course of which it has drilled artesian wells, constructed a reservoir, and done other work towards the construction of an independent water system of its own, and that to meet an emergency caused by depletion of water supply in the city lakes, some time since, the defendant corporation turned over to the city for its use, in connection with its artesian wells and reservoir, a portion of its distributive system, while it retained the remainder of such system and the city main mentioned in the franchise ordinance and contract, and that through the different portions of the system as thus divided, the city and defendant, Ennis Water Works, have

been supplying, and are now supplying, the city, its inhabitants and industries, with water, partly from said lakes and partly from said artesian wells, and I further find that, in order that the City of Ennis, its inhabitants and industries may be supplied with the necessary water for domestic use and for the prevention and extinguishing of fires and other proper uses, it is necessary that this tentative arrangement be continued for a reasonable time, until there is an adequate supply of water in said lakes, or until the city shall have had a reasonable time within which to complete its water system, and I find six months to be a reasonable time for such completion, and that a fair arrangement in this regard is that the city pay $125.00 per month in excess of the rental value of its mains, used by the defendant corporation, for the use of that portion of the plant used by the city, and belonging to such defendant corporation, but this tentative arrangement should be and is held subject to the further orders of the court as circumstances may change, and I find this suit to be a legal demand by the plaintiff against the defendant for full restitution of possession and use of all property of the city the possession or use of which is claimed by the defendants or either under the franchise ordinance and contract herein in issue.

"8.   I find that the defendant, Ennis Water Works, has furnished the City of Ennis water for which said city is justly indebted to it, the Ennis Water Works, in the sum of $1,050.00 in excess of all payments made by the city, or other claims of a pecuniary nature which it has against said Ennis Water Works."

Upon the foregoing findings of fact the trial court held that the contract in issue should be forfeited as prayed for.

It will not be necessary to a thorough understanding of the questions involved in this controversy, to set out in full the contract entered into by and between the City of Ennis and A. M. Morrison, as authorized by the city council of the City of Ennis, and we will only reproduce such portions of said contract as we think will fairly give a comprehensive understanding of the points decided herein.

Those sections of the contract thought to be essential to a proper understanding of the questions involved are as follows:

"Sec. 1.   The said City of Ennis does hereby give and grant unto A. M. Morrison, a citizen of the City of Ennis, Texas, his heirs and assigns, for the term of thirty years from the date of the adoption of this ordinance, the right and privilege to supply the City of Ennis and the inhabitants thereof (and of the territory adjacent thereto) with water for domestic and other uses and for preventing and extinguishing fires."

"Sec. 2.   The said A. M. Morrison, his heirs or assigns, is hereby authorized and empowered to establish, construct, maintain and operate a system of water works in or adjacent to the City of Ennis, to receive, take and store, conduct and distribute water through said city and adjacent territory; to construct and extend mains and pipes through all the streets, alleys, public grounds, and all places under the control of said City of Ennis, and we hereby ratify and approve the location of all machinery mains and pipes now laid or in use; to erect and maintain all engines, machinery and all other appliances

necessary for the proper conduct of said water works and for supplying said city and the inhabitants thereof, and of adjacent territory, with water for domestic, manufacturing, extinguishing fires and other purposes.

"Sec. 4. The City of Ennis hereby contracts with the said A. M. Morrison, his heirs and assigns, and agrees to rent and does rent of him thirty-five (35) double-nozzle fire hydrants, as the same are now located for extinguishing fires, at a rental of Twelve Hundred ($1200.00) Dollars per annum, payable monthly in advance; and the city council, for the purpose of providing for the payment of all such hydrant rental, shall levy, collect and appropriate annually a sufficient sum of money to cover the amount to become due under this contract.

"Sec. 5. At any time the city council shall direct, said A. M. Morrison, his heirs or assigns, shall make extensions to the mains, provided that the amount of such extension shall not exceed two thousand (2,000) feet per annum unless said Morrison, his heirs or assigns, shall consent thereto; and provided further that a double nozzle and steamer connection fire hydrant shall be located on every 1,000 feet of such extension, for which hydrants the City of Ennis contracts and agrees with said Morrison, his heirs and assigns, to pay him a rental of Forty ($40.00) Dollars each per annum, payable in the manner, at the same time and by the means provided in the preceding section.

"Sec. 7. The City of Ennis hereby grants to the said A. M. Morrison, his heirs or assigns, the right and privilege to take all the water that may be required for the purposes above enumerated from the reservoirs or lake situated as follows:

"(a) The reservoir known as the 'old Lake,' situated northwest of the City of Ennis, Texas, being a part of the I. D. Sheppard survey, and adjoining a certain 73 3/10-acre tract of land owned by the H. & T. C. R. R. Co.

"(b) The reservoir known as the 'New Lake,' also situated northwest of the City of Ennis, and being on the same tract of land contracted for by the City of Ennis from Mark Latimer on the 17th day of January, 1895, to deed to which reference is here made for a fuller description.

"Together with the right of way through all the grounds adjacent to said lakes and owned by the city, subject to the contracts heretofore entered into by and between the City of Ennis and the Houston and Texas Central Railroad Company with reference to the use of water by the said Railroad Company out of said lakes.

"The further privilege is granted to the said Morrison, his heirs and assigns, to enter in and upon said tracts of land upon which said reservoirs are situated and to erect thereon machinery and improvements necessary for the conducting of said water business.

"Sec. 8. The City of Ennis, in consideration of the sum of Fifty ($50.00) per month, payable to it on the first day of each month in advance, hereby lets and leases to the said A. M. Morrison, his heirs and assigns, during the term of this contract about 8,000 feet of 8-inch water main belonging to the said City of Ennis and laid by it from

the pumping station at said New Lake to a junction with his main near the standpipe.

"Sec. 9.   The said A. M. Morrison shall furnish water to the citizens of Ennis at a rate not to exceed the average of water rates of cities in Texas of population approximately the size of Ennis.

"Sec. 10.   The City of Ennis reserves to itself the right to acquire by purchase and become the sole owner of said water works system at the expiration of five years, or in periods of five years thereafter, upon giving twelve months' notice of such intention and upon paying therefor to the owners thereof the value of said property at the time of said purchase.   Franchise, having been given without consideration, not to be valued in this appraisement.   And such value shall be ascertained by appraisement, each party to select a disinterested and competent person for that purpose, and if the said appraisers fail to agree they shall select an umpire to act with them, which said umpire shall pass upon the points of disagreement between the two said appraisers."

It is assigned as error, "that the Court of Civil Appeals erred in holding that under the facts found by it, which were the same that had been found by the trial court, the defendant in error was entitled to a judgment of forfeiture, as prayed for, and in affirming the judgment of the trial court."

The questions presented for decision are purely of law.   The contract itself is so similar in its terms and language to the contract in the case of the City of Brenham v. Brenham Water Works Company, 67 Texas, 542, that we can say with accuracy there is no substantial difference in the two contracts, except in respect to the length of time they were to exist, and the ceding of certain substantial rights and privileges under the present contract not contained in the Brenham contract.

If this court is to adhere to the holding in the Brenham case, then we are forced to the conclusion that the judgment of the Court of Civil Appeals should be affirmed, for there is no possible theory upon which this case can be distinguished from the Brenham case.   This statement will receive verification by a comparison of the two contracts, as set out in the opinions in the two cases.

The Brenham case upon the questions arising in this case is the leading authority in this State, and since its rendition not only has it been approved in its announcement of the general principle that contracts by municipalities granting exclusive rights and privileges for long periods of time are contrary to the Constitution and general policy of the law of this State, but also it has been approved as announcing a correct rule of construction placed upon specific language. To such an extent has that case been cited, discussed and approved, not only in relation to the general principles of law announced against monopolies and perpetuities, but as to the legal effect to be given the language in which the contract is couched, that we are not willing to say the interpretation there given the language granting the right and privilege for a great length of time to furnish and supply the city and its inhabitants with water has not become, at least in this jurisdiction, a rule of construction worthy to be observed and adhered to.

The doctrine in the Brenham case has been cited with approval by this court in the following cases: Altgelt v. City of San Antonio, 81 Texas, 436, 13 L. R. A., 383; City of Austin v. Nalle, 85 Texas, 520; Edwards County v. Jennings, 89 Texas, 621, and Hartford Fire Insurance Co. v. City of Houston, 102 Texas, 317, 116 S. W., 36.

It is worthy of note that the personnel of the court was partially changed in each of these cases from what it was when the Brenham case was decided. This observation is made in view of the insistency of learned counsel for plaintiff in error that the Brenham case stands alone in its enunciation of legal principles relating to constitutional and contractual construction.

It is desirable to state that we recognize the well established rules of statutory construction, which are in a sense applicable in construing contracts, to the effect that if such statute is susceptible of two constructions, one of which places it in opposition to and the other in harmony with the Constitution, the latter should be adopted (State v. Galveston, H. & S. A. Ry. Co., 100 Texas, 153; Texas Cent. R. R. Co. v. Marrs, 100 Texas, 530; Morgan Bros. v. Missouri, K. & T. Ry. Co. of Tex., 50 Texas Civ. App., 420, 110 S. W., 985), and that the grants of public rights by municipalities to individuals are to be strictly construed in favor of the public as against the individual, and that an exclusive grant will not be implied unless given by express terms or by clear implication. (Stine v. Bienville Water Supply Co., 141 U. S., 67; and City of Vicksburg v. Vicksburg Water Co., 202 U. S., 553.)

We do not think the application of these rules of construction to the contract under investigation will warrant the conclusion that the contract entered into by the City of Ennis with Morrison is not exclusive in its terms, and therefore not obnoxious to the Constitution, section 26, article I, that "Perpetuities and monopolies are contrary to the genius of a free government, and shall never be allowed."

We deem it unnecessary to discuss the proposition that, if the contract in question is by its terms necessarily exclusive and grants the right and privilege to the water works company to supply the City of Ennis and its inhabitants with water for the period of thirty years, with no power in the city to grant to others the right to compete in supplying its inhabitants with water, or to exercise its legislative authority to furnish water for its own use and the use of its citizens, it would be repugnant to the constitutional provision of this State, as above quoted. Whatever may be the law of other States, it is indisputably the settled policy of this State that monopolies and perpetuities shall not exist under sanction of law. It is therefore the duty of our courts to strike down with mailed hands every contract, whether granted under legislative or in the exercise of municipal authority, where exclusive rights and privileges are granted to the inconvenience or detriment of the public interest. We are not called upon to defend the wisdom or the policy of our law in its condemnation of monopolies, and it is enough to say that the business of the world in its general operation has created a difference in commercial standing which has been produced more from monopolistic advantages

secured by favor or inadvertence than by skill, industry or any other economical principle known to man.

The main question then for our determination is whether or not the contract, the subject of this investigation, by its express terms or by necessary and clear implication, grants the exclusive right and privilege to the water works company to furnish or supply water to the City of Ennis and its citizens for a period of thirty years. If it does, it is void; otherwise it is valid.

We are not able to appreciate the criticism aimed at the opinion of that most accomplished and profound jurist, Judge Stayton, in the Brenham case, that it stands solitary and alone in the judicial realm of this country. It does not, as we think, stand alone in the sense that any court of last resort in this country has ever announced a doctrine contrary to that stated in that opinion. So far as we have been able to ascertain from a most diligent search and examination of both text books and cases, we have found no authority announcing a doctrine contrary to that of the Brenham case, where the contract was the same and a constitutional or statutory provision existed against monopolies and perpetuities as in this State, except the opinion of Judge Pardee in the case of Bartholomew v. City of Austin, 29 C. C. A., 568, 85 Fed., 359, and the statement of Judge Taft in his opinion in the case of Cunningham v. City of Cleveland, 39 C. C. A., 211, 98 Fed., 657, that he would not follow the Brenham case in the event the case he was considering was not distinguishable from it.

It is significant that in the only case where a contrary doctrine to that of the Brenham case has been declared, no analysis of the contract has been made in the opinion and no substantial ground given why the language of the contract does not import the existence of an exclusive grant of rights and privileges. The statement, unsupported by reason, is made that there is nothing in the contract to prevent the City of Austin from granting the right to others to lay mains and pipes in the streets and alleys of the city for the purpose of selling water to its citizens. This is true of all the other cases to which reference has been made in the able and exhaustive brief of plaintiff in error's learned counsel, and in the cases referred to in the opinion of Judge Pardee, except the three cases of the City of Brenham, the City of Austin and the City of Ennis. These three cases are distinguishable from all the other cases in the fact that, in addition to the grant of the right to lay pipes and mains in all streets and alleys of the city for the purpose of furnishing water to the city and its inhabitants, which does not deny the authority to grant a similar right to other citizens, it grants for the specified period "the right and privilege to supply the city and its inhabitants with water for domestic and other uses and for the purpose of extinguishing and preventing fires." This latter clause is the distinguishing feature of the three cases named from all the other cases to which citation has been made.

It is reasonable to assume the contracting parties had some purpose in the provision in the case at bar as set out in section 1, as giving some additional force to the other section granting the right to the use of the streets for the construction of a water works system and its equipage for the purpose of selling water to the city and its

inhabitants. If no exclusive right and privilege was intended to be given by the contract, then the section granting the right to the streets and alleys of the city in which to construct and equip a system of water works for the purpose of selling water to the city and its citizens was complete, and there arose no necessity for the other provision granting "for the term of thirty years, the right and privilege to supply the City of Ennis and the inhabitants thereof with water for domestic and other uses and for the purpose of extinguishing and preventing fires."

The right to sell water to the inhabitants of the City of Ennis and to the city was a natural and inherent right in Morrison, as it existed in every other citizen, and no authority to exercise that right was required to be secured from the City of Ennis, but the exercise of the right to use the streets and highways of the city for the purpose of delivering the water he had the inherent right to sell was another question. The contract with Morrison giving him the right to lay his water mains and pipes in the streets of the City of Ennis was valid as such right was not in any sense exclusive. There is nothing in this grant to prevent the city from making a similar grant to any other citizen who might apply for such right. The contract, however, does not stop with the grant of franchise to use the streets and alleys for laying mains and pipes for the purpose of conducting water to be furnished the City of Ennis and its inhabitants. It goes further and, in addition to the grant of franchise, grants the right and privilege to Morrison, his heirs and assigns, for the term of thirty years, "to supply the City of Ennis and the inhabitants thereof with water for domestic and other uses and for preventing and extinguishing fires." The additional grant and the right and privilege to supply the city and its inhabitants with water, taken in connection with the specific language used, imports necessarily the idea of exclusiveness. What authority would remain to the City of Ennis, if this contract was valid, to grant to any other citizen the right to lay mains and pipes in the streets of Ennis for the purpose of furnishing or selling water to its citizens? Could it not be successfully contended by the water works company, as assignee of Morrison, that under contract the City of Ennis had granted it the right to supply such city with water and therefore there exists no authority to give such right to another. Would it be a sufficient answer to say you were, by the terms of the contract, simply giving the right to construct a system of water works in the streets and highways of the City of Ennis for the purpose of enabling you to deliver water to those to whom you have contracted to sell water, and the further right and privilege was given you by the contract to sell water to the city and its inhabitants for the term of thirty years. It seems to us clearly this contention would not be tenable. The water works company would answer with a perfect defense, that it is otherwise "nominated in the bond," since the right to sell water to the citizens of Ennis was a natural and inherent right not subject to license and not required to be granted by the city.

Construing this contract, we think it is not only essential but proper to consider the peculiar language used by the contracting parties. However, we do not feel called upon to enter into any further dis-

cussion of the subject of the nature of the contract in this case, as it has been construed by the Brenham case, which authority has stood the acknowledged law of this State for twenty-five years. At the time the contract in the case at bar was entered into, the Brenham case had been promulgated for over thirteen years and had been approved by all the cases heretofore cited. It had placed upon a similar contract a rule of construction, and announced the general policy of the law of this State that was well known to its bar and people. No rights· could have innocently accrued to the plaintiff in error demanding a change of the law to meet a great and imperative necessity. If a harsh rule of construction had been announced, it was not placed under a bushel, but set upon a hill. Such contract had been declared repugnant to the Constitution, and the provisions of that instrument declaring monopolies and perpetuities contrary to the genius of a free government had received a definite construction.

It is urged that this court should overrule the Brenham case, and we are admonished that the courts of the United States will not follow the ruling of this court if the Brenham case is held to be the rule of construction as to the case at bar and are referred to the 'Bartholomew case. The contract in that case, it is true, was very similar to that in the Brenham and in the case at bar, and while the Circuit Court of Appeals refused to follow the Brenham case, such refusal was based upon the fact that the contract with the City of Austin by Bartholomew had been in force for five years and bonds had been issued and floated, secured by a lien on the water works before the decision in the Brenham case had appeared. The position there assumed by Judge Pardee is not without great force and does not in the slightest degree indicate a want of due regard for the rulings of this court upon questions of local state policy and state constitutional construction. The same reasoning, however, for not following the Brenham case in the Bartholomew case does not exist here, for when the City of Ennis contract was entered into the rule in the Brenham case as heretofore stated had existed for a period of thirteen years and was at that time well known to the bar of Texas.

We desire to quote from the opinion of Judge Pardee for the purpose of showing the principal reason why the ruling in the Brenham case was not followed by the United States Circuit Court of Appeals: "There is a long line of cases that affirm the independence and freedom of contracts like the one under consideration from the objection that they are void because a supposed monopoly is embodied in them, and many are cited in the briefs; but a review of them is not essential to illustrate our views, which are that the contract forming the basis of the plaintiff's action in this case cannot and ought not to be construed as in any just sense granting an obnoxious exclusive privilege, or as granting to the city water company any monopoly inhibited either by public policy or by the provisions of the Constitution of the State of Texas, wherein it is declared that 'perpetuities and monopolies are contrary to the genius of free government, and should never be allowed.' Ordinarily this would be conclusive in this case, but we find that five years after the rights in question were granted to the city water company, under a general state of the law that such

contracts were meritorious and valid, and after the induced and necessary capital had been invested, the works organized and accepted by the city of Austin, and negotiable bonds had been floated on the market, secured by mortgage on said works, with the direct consent of the city of Austin, as evidenced by the provisions of the contract, the Supreme Court of State of Texas in the city of Brenham v. Brenham Water Company, 67 Texas, 542, in dealing with a contract in all material respects similar to the one involved in this case, held that, although no exclusive privilege was in terms granted, yet necessarily the effect of the contract was to grant an exclusive privilege, and, further, that the contract thus necessarily granting an exclusive privilege was the granting of a monopoly, in violation of the Constitution of the State of Texas. The opinion filed in the case by the learned Supreme Court was very elaborate, and purports to review the general jurisprudence on the subject; but for the reasons hereinbefore given, with all respects, we are compelled to differ from the reasoning and conclusion of the court.''

It is contended that the Brenham case has been overruled by the case of Walla Walla v. Walla Walla Water Co., 172 U. S., 1. We do not think this is true. That case is not analogous to the Brenham case nor to the case at bar. From the statement of Mr. Justice Brown in the Walla Walla case the grant of the City of Walla Walla to the Water Company was in these words: ''The right to lay, place and maintain all necessary water mains, pipes, connections and fittings in all the highways, streets and alleys of said city, for the purpose of furnishing the inhabitants thereof with water.'' This grant was for twenty-five years, but under direct legislative authority granting the city in its charter such power with the proviso that such rights or privileges should ''not be exclusive, nor prevent the council from granting the same right to others.'' The grant in the case at bar and in the Brenham case is, as has been shown, more than a grant to lay pipes in the streets for periods of twenty-five and thirty years, to furnish water to the city and its inhabitants, but there is a special grant of the right and privilege to supply those cities and their inhabitants with water for those periods. Justice Brown, in the Walla Walla case distinguished that from the Brenham case as is evident from the following language made use of by him: ''Had the privilege granted been an exclusive one, the contract might be considered objectionable upon the ground that it created a monopoly without an express sanction of the legislature to that effect. It is true that in City of Brenham v. Brenham Water Co., 67 Texas, 542, a city ordinance granting to the water company the right and privilege for the term of twenty-five years of supplying the city with water, for which the city agreed to pay an annual rental for each hydrant, the Supreme Court of Texas held to be the grant of an exclusive privilege to the water company for the period named. The decision seems to have been rested largely upon the use of the words 'privilege and supplying',—words which are not found in the contract in this case. Without expressing an opinion upon the point involved in that case, we are content to say that an ordinance granting a right to a water company, for twenty-five years to lay and

maintain water pipes for the purpose of furnishing the inhabitants of a city with water, does not, in our opinion, create a monopoly or prevent the granting of a similar franchise to another company. Particularly is this so when taken in connection with a further stipulation that the city shall not erect water works of its own. This provision is not devoid of an implication that it was intended to exclude only competition from itself, and not from other parties whom it might choose to invest with a similar franchise.''

We think the Court of Civil Appeals has properly disposed of all the matters complained of by plaintiff in error, and finding no error in the judgment of that court, it is ordered affirmed.

*Affirmed.*

Writ of error was granted by the Supreme Court of the United States.