**LEA COUNTY ELECTRIC COOPERATIVE, INC., Appellant,**

v.

**CITY OF PLAINS et al., Appellees.**

**No. 7288.**

Court of Civil Appeals of Texas.

Amarillo.

Oct. 28, 1963.

Rehearing Denied Dec. 2, 1963.

Crenshaw, Dupree & Milam, Lubbock, for appellant.

Calloway Huffaker and Harold Green, Tahoka, for appellees.

CHAPMAN, Justice.

Lea County Electric Cooperative, Inc., a nonprofit cooperative electric energy company, incorporated under the laws of the State of New Mexico originated this suit against the City of Plains, and its mayor, city councilmen, and city secretary in their official capacities. The Cooperative sought judgment decreeing as valid a lower schedule of rates to be charged its customers in the City of Plains for electricity.

Its pleadings say that by a resolution of the Cooperative Board of Trustees it adopted a schedule of electric energy rates for the City of Plains, as well as the other cities in which it does business, and under date of April 21, 1960, submitted to the city council of the City of Plains such proposed rates for its consent; that the City did not act on the proposal, and that thereafter the matter was again called to the attention of the City. The Cooperative contends, as it did in the trial court, that by its silence the City consented to the proposed rates submitted to the city council on April 21, 1960, that the current rates set by the City Franchise Ordinance are in violation of Article 1438, Vernon's Ann.Tex.Civ.St., and sought a temporary injunction permitting it to place into operation the lower rates pending final determination of the suit.

The City filed many exceptions to the jurisdiction of the court to pass upon the questions presented and by cross-action sought a permanent injunction against the Cooperative from doing business in the City of Plains and requiring it to remove all its poles, lines and other facilities from the streets and alleys of the City.

In answer to the City's cross-action the Cooperative pleaded the City could not question its right to do business in the City because (1) such question could be raised only in a direct quo warranto proceeding and (2) the City had no legally 'cognizable

**92**

or compensable damage in that the only damage it could suffer could be from competition, from which it has no legal right to be free.

The trial court dismissed the Cooperative's suit on the ground it had no authority to determine the questions presented regarding rates and sustained the Cooperative's exceptions to the cross-action of the City and dismissed such cross-action.

Both parties have appealed from the action of the trial court.

Prior to the date of its incorporation the people of the City of Plains received electric energy from Plains Power & Light Company through "central station service" as that term is defined in Subdivision (5) of Section 3 of Article 1528b V.T.C.S. That service continued until the Cooperative purchased that company on February 21, 1953. The Cooperative furnished all the electric power for the City until February 21, 1957, at which time the City of Plains installed its own municipal electric power system. From that time to the present the Cooperative and the City have been competitors in furnishing electricity to the City.

Article 1119 V.T.C.S. gives all incorporated cities and towns incorporated under the General Laws thereof the power to regulate by ordinance the rates and compensation to be charged all persons, companies or corporations, using the streets and public grounds of said city or town, and engaged in furnishing water, gas, telephone, light, power, or sewerage service to the public and to prescribe rules and regulations under which such commodities shall be furnished, and services rendered, and to fix penalties to enforce such charges, rules and regulations; provided, however, they shall not prescribe any return or compensation which will yield more than a fair return upon the fair value of the property used and useful in rendering its service, and which in no event shall exceed 8 per cent per annum.

The City of Plains was incorporated under title 28, Vernon's Texas Civil Statutes, on October 20, 1952.

The power of a city, so organized, to regulate rates is governmental. City of Uvalde v. Uvalde Electric & Ice Co., 250 S.W. 140 (Tex.Com.App.); City of Wink v. Wink Gas Co., Tex.Civ.App., 115 S.W.2d 973 (writ refused). It is not a judicial function. Community Natural Gas Co. v. Natural Gas & Fuel Co., Tex.Civ.App., 34 S.W.2d 900, syl. (7–8).

In the last cited case where the competing gas companies furnishing service to the City of Brownwood were involved the court held the controversy was one which addresses itself in the first instance to the City of Brownwood, not to the courts, and that its duty to regulate included the power to prevent ruinous competition among the producers as well as unjust charges to the consumers.

In City of Wink v. Wink Gas Co., supra, by a "writ refused" disposition our Supreme Court has approved a holding to the effect that since the power to regulate rates is one derived from a general grant, courts have jurisdiction to inquire into the reasonableness of the mode by which it is proposed to be exercised. However, this was a case directly attacking a rate ordinance and another ordinance already passed. In the instant case the City had not even had a hearing on the rates the Cooperative sought to invoke. The court in the Wink case also held:

"The power of the city to regulate rates to be charged by public utilities and to prescribe rules and regulations under which such commodities shall be furnished is governmental."

Therefore, we believe the trial court properly held that it was without jurisdiction to grant the relief sought by the Cooperative.

In view of the cross-action of the City we actually have two law suits in one, with

four briefs. We now pass to a consideration of the suit by the City seeking a permanent injunction against the Cooperative from doing business in the City of Plains and requiring it to remove all its poles, lines and other facilities from the streets and alleys of the City.

◼ We believe the trial court also properly dismissed the cross-action of the City of Plains under the exceptions to the effect that the questions presented as to the right of the Cooperative to do business under the laws of Texas can only be raised and determined in a direct quo warranto proceeding brought by the Attorney General of the State of Texas. Article 4, Section 22, Texas Constitution, Vernon's Ann.St.; State v. International & G. N. R. Co., 89 Tex. 562, 35 S.W. 1067; Security State Bank of San Juan v. State, Tex.Civ.App., 169 S.W.2d 554, 561, syl. (10-11), (refused W.M.); Southwestern Gas & Electric Co. v. City of Gilmer, D.C.Tex., 123 F.Supp. 11, affirmed 5 Cir., 224 F.2d 794; Laurel Land Memorial Park Inc. v. Pinto, Tex. Civ.App., 358 S.W.2d 729 (NRE).

◼ We believe there is also another reason why the action of the trial court in dismissing the City's cross-action was proper. No legally, cognizable and justiciable right or interest of the City is or will be infringed or invaded because the Cooperative is furnishing electric energy therein. It is obvious from the record that the competition of the Cooperative to the municipal electric energy plant is the real basis of the City's complaint. The City does not have a right to grant an exclusive franchise to itself or anyone else. Article 1, Section 26, Constitution of Texas; Article 7428a, V.T. C.S.; West Texas Utilities Co. v. Smith, Tex.Civ.App., 168 S.W.2d 665 (writ refused); Southwestern Gas & Electric Co. v. City of Gilmer, Tex., supra.

◼ The City has neither a legal nor equitable right to be free from competition in the furnishing of electric energy to its inhabitants. Any damage that would be caused is damnum absque injuria, a damage *not consequent upon the violation of any* right recognized by law. Southwestern Gas & Electric Co. v. City of Gilmer, Tex., supra.

The City's cross-action stated that Faulkenbury, Romans, and Duff each brought the action "as a member and/or stockholder and/or owner of equity" in the Cooperative. As such they sought to question the right of the Cooperative to furnish electric energy to the City.

In considering the proposition as to whether a member of a corporation may question its action a distinction must be made between the act of a corporation which is merely without authority, i. e., acts beyond the powers of the corporation as defined by its Articles of Incorporation —ultra vires acts—and an illegal act, an act contrary to an express statutory or penal code. Appellant alleges the Texas Statutes, illegal acts as distinguished from ultra vires acts, prohibit the electric services rendered by the Cooperative to the City.

◼ In Texas a corporate act becomes illegal when committed in violation of an express statute or a specific subject or when it is malum in se [1] or malum prohibitum [2], or when it is against public policy. Southwestern Gas & Electric Co. v. City of Gilmer, Tex., supra; Staacke v. Routledge, 111 Tex. 489, 241 S.W. 994. Under these authorities the acts may be questioned only through quo warranto by the Attorney General.

◼ Therefore, even if it might be said that the three Cooperative members above

---

[1]. A wrong in itself; an actor case involving illegality from the very nature of the transaction, upon principles of natural, moral and public law.

[2]. A wrong prohibited; an act involving an illegality resulting from prohibitive law.

named have properly intervened they are without authority to question acts that are illegal as distinguished from ultra vires acts in the proceeding.

Accordingly, the judgment of the trial court is in all things affirmed.