**SOUTHWESTERN PUBLIC SERVICE COMPANY, Appellant,**

v.

**PUBLIC UTILITY COMMISSION of Texas et al., Appellees.**

No. 12882.

Court of Civil Appeals of Texas, Austin.

Feb. 28, 1979.

Rehearing Denied March 21, 1979.

508

W. F. Countiss, Culton, Morgan, Britain & White, Amarillo, for appellant.

John L. Hill, Atty. Gen., J. Scott Wilson, Asst. Atty. Gen., Austin, for Public Utility Comm.

B. D. St. Clair, McGinnis, Lochridge & Kilgore, Austin, and Dale H. Johnson, McWhorter, Cobb & Johnson, Lubbock, for South Plains Elec. Co-op., Inc.

O'QUINN, Justice.

The principal issue in this lawsuit involves the disputed right of one or the other of two electric utilities, and the right of the City of Lubbock, to serve the inhabitants of an area comprising about 143 acres annexed by the City in November of 1976.

Prior to annexation, the disputed area, which South Plains Electric Cooperative, Inc., served exclusively from 1938 to 1976, had been certificated to South Plains by the Texas Public Utility Commission, pursuant to an agreement among South Plains, Southwestern Public Service Company, and the City of Lubbock, as authorized by Section 56 of the Public Utility Regulatory Act (Acts 1975, 64th Leg., p. 2327, ch. 721, as amended; Art. 1446c, V.A.C.S.).

After passage of the Public Utility Regulatory Act in 1975 (Art. 1446c), as indicated above, the utility parties in this lawsuit, including the City of Lubbock, acting together obtained certificates from the Commission in October of 1976 to certain acreage lying within and outside the corporate limits of Lubbock in a proceeding designated Docket 42. The present litigation derived from action later of the City by which it annexed 283 acres of the area previously certificated by the Commission. About one-half of that area had been certificated in 1976 to Southwestern Public Service Company, and 143 acres of the annexed territory had been certificated to South Plains Electric Cooperative, Inc. Only the area already certificated to South Plains is involved in this suit.

Southwestern applied to the Commission (Docket 308) requesting that it be "dually certificated" to serve the area of 143 acres, along with South Plains, and that Southwestern's certificate previously acquired in 1976 be amended to include the 143 acres previously certificated to South Plains alone.

The City of Lubbock appeared and participated in proceedings under Docket 308 and took the position that since the territory was within its corporate limits, the City could and would furnish electric services at retail without obtaining a certificate of convenience and necessity for the area from the Commission. The City did not apply for a certificate to include the area and offered no evidence to support the grant of a certificate to the City. South Plains filed its intervention and protest, and was made a party to the proceeding by the Commission.

In its final order at conclusion of the hearing, the Commission denied Southwestern's application to serve the 143 acres, and granted a certificate to the City of Lubbock to include the area. This latter extraordinary action was taken by the Commission despite the City's posture before the Commission, which counsel for the City subsequently in open court restated in the appeal to district court: "We did not feel like it was incumbent upon us to file an application . . . . It's true we didn't request a certificate. And we have taken the position all along that it was not necessary for the City to make an application. This is our position."

Southwestern appealed from decision of the Commission to district court. All parties before the Commission participated in proceedings before the trial court. After hearing, the trial court entered judgment affirming action of the Commission in denying the application of Southwestern and reversed and set aside the Commission's grant of a certificate to the City of Lubbock. We will affirm the judgment of the district court.

On appeal from judgment of the court, Southwestern brings seven points of error. Under the first five points Southwestern contends in the main that the City of Lubbock is the only regulatory authority having jurisdiction of the disputed area, now within the City's corporate limits, and that the Commission is without jurisdiction to grant or deny a certificate of convenience and necessity; further, that Southwestern, having a franchise from the City of Lubbock, is entitled "to legally serve in the area in question," and that a certificate granted by the Commission is not superior to the franchise the City of Lubbock granted Southwestern in 1964.

We find some problem in reconciling this position of Southwestern with that taken by it in motion for rehearing before the Commission in which Southwestern declared, "Southwestern does not contend, and has never contended, that it is entitled to serve without a certificate from this Honorable Commission and to the extent that the quoted language . . . [from the Commission's order] indicates a contrary position, it is erroneous."

Under the final points of error, Southwestern contends that it has been deprived of property rights represented by its franchise, and that the Commission erred in determining that it was not necessary for South Plains to hold a franchise from the City of Lubbock in the disputed area of 143 acres. We do not find this latter contention raised in Southwestern's motion for rehearing before the Commission, and appears to be an issue raised for the first time on appeal from district court.

It is appropriate, preliminary to disposition of the issues in this appeal, to examine in some detain the pertinent and controlling provisions of the Public Utility Regulatory Act.

In section 2 of the Act the Legislature declared, "The purpose of this Act is to *establish a comprehensive regulatory system* which is adequate to the task of regulating public utilities as defined by this Act, to assure rates, operations, and services which are just and reasonable to the consumers and to the utilities." (Emphasis added). Immediately prior to declaring its purpose in enacting the regulations, the Legislature expressly found " . . . that public utilities are by definition monopolies in the areas they serve; that therefore the normal forces of competition which operate to regulate prices in a free enterprise society do not operate; and that therefore utility rates, operations and services are regulated by public agencies, with the objective that such regulation shall operate as a substitute for such competition." (Art. 1446c, sec. 2).

Although the Act defines a "public utility" or a "utility" to include "any person,

corporation, river authority, cooperative corporation, or any combination thereof, *other than a municipal corporation . . .* " (Emphasis added; sec. 3(c)), municipalities are expressly *included* in the definition of "retail public utilities" (sec. 49(a)), which are made subject to Article VII of the Act, under which *retail public utilities* are required to obtain from the Public Utility Commission "a certificate of public convenience and necessity that includes the area in which the consuming facility is located." (sec. 50(2)).

Although the Regulatory Act became effective September 1, 1975, a period of adjustment to this comprehensive new legislation was permitted public utilities and municipalities affected by the law. For example, the requirements of section 50 as to certificates of public convenience and necessity were postponed to a time "Beginning one year after . . . " September 1, 1975. Under section 87(b) the Commission "shall assume jurisdiction over rates and service of public utilities on September 1, 1976," one year after effective date of the Act; and under section 90(a), certain specified existing statutes " . . . and all other laws and parts of laws in conflict with this Act are repealed effective September 1, 1976," or one year later. Municipalities were allowed under section 22 to continue to regulate local utility services within " . . . their boundaries until the commission has assumed jurisdiction . . . "

In its new position, assumed for the first time on appeal from judgment of the district court, Southwestern insists that the City of Lubbock, within its corporate limits, has exclusive jurisdiction over the right of a public utility to serve retail customers, and that the Commission has no authority to grant or deny a certificate of public convenience and necessity inside the City boundaries. Southwestern, already serving portions of the City under its franchise granted eleven years prior to the Act, now claims it may also serve the 143 acres certificated to South Plains previous to annexation of the area by Lubbock late in 1976. In an effort to sustain this position, Southwestern in-

vokes provisions of sections 17 and 22 of the Act.

Section 17 provides that *"Subject to the limitations imposed in this Act,* and for the purpose of regulating rates and services . . . the governing body of each municipality shall have exclusive *original* jurisdiction over . . . rates, operations, and services provided by an electric, water, and sewer utility within its city or town limits." (Emphasis added; sec. 17(a)).

After two years following effective date of the Act, a municipality may surrender its *original* jurisdiction to the Commission (sec. 17(b)), but exclusive *appellate* jurisdiction, to review orders and ordinances of municipalities adopted in exercise of original jurisdiction over "rates, operations, and services," is reserved to the Commission at all times. (sec. 17(d)).

During the initial period, after effective date of the Act, in which period the Commission was without power to assume jurisdiction over grants or denials of certificates of convenience and necessity, municipalities were authorized to " . . . *continue to regulate* each kind of local *utility service* inside their boundaries . . . " under provisions of section 22. (Emphasis added).

Powers exercised by municipalities of this state over public utilities have never been in the field of granting or denying certificates of convenience and necessity. Except under a municipality's statutory powers to control use of its streets and alleys, it has been denied power over public utilities to prohibit or to control the operation of the business of utilities. *West Texas Utilities Company v. City of Baird,* 286 S.W.2d 185, 189 (Tex.Civ.App. Eastland 1956, writ ref'd n. r. e.), following *Ennis Water Works v. City of Ennis,* 105 Tex. 63, 144 S.W. 930, 934–5 (1912).

The Legislature created in the Regulatory Act new powers, constituting a "comprehensive regulatory system" for utilities, and reserved to the Utility Commission exclusive original jurisdiction to grant or deny certificates of public convenience and necessity for any area in which the facility consuming the utility service is located. (Art. VII, sec. 50).

Procurement of a certificate is required before a retail public utility may serve an area already being served. Southwestern sought such a certificate before the Commission in order to serve the 143 acres annexed by the City of Lubbock in November of 1976. Southwestern's application was denied by the Commission, and the Commission's decision was sustained by the district court. Southwestern's effort on appeal to escape the plain provisions of the Regulatory Act (1) by disavowing the Commission's statutory power to grant or deny certificates, and (2) by adhering to the theory that the municipality has exclusive power to extend Southwestern's franchise into the 143 acres, in both aspects is without merit, and the points of error under such contentions are overruled.

■ We hold that, beginning one year after effective date of the Regulatory Act, section 50 of the Act became effective, and that Southwestern could in no way render service under any franchise without first obtaining from the Commission a certificate that the present and future public convenience and necessity require such operation or extension, as provided under section 50(1). In 1976, jointly with South Plains and the City of Lubbock, Southwestern did obtain such certificate for the areas, inside and outside of the corporate limits of Lubbock, then and now being served by Southwestern, as authorized by the Commission under Docket 42.

■ We further hold that Southwestern, before undertaking to serve the 143-acre area, certificated at the same time in 1976 to South Plains, by extending Southwestern's service to the area being lawfully furnished by South Plains, another retail public utility, must first obtain a certificate of public convenience and necessity for that area. (sec. 50(2)). This latter Southwestern attempted to accomplish by application to the Commission in Docket 308, from which the present appeal is derived. The Commission properly denied Southwestern's application, and the district court correctly

affirmed the Commission's action in denying Southwestern's application.

■ Southwestern also attacks the district court's judgment under the contention that because Southwestern's franchise from the City of Lubbock antedates the Public Utility Regulatory Act, it was error to deprive Southwestern of its "vested franchise right and obligation to serve the area annexed by the City of Lubbock."

This contention by Southwestern is out of harmony with Southwestern's position before the Commission where the utility conceded that a certificate to a franchise holder could issue only if the standards for determining the public convenience and necessity under section 54 of the Act were found by the Commission.

The Legislature in section 21 of the Act expressly preserved the " . . . rights and powers of a municipality to grant or refuse *franchises to use the streets and alleys within its limits* and to make the statutory charges for the use thereof . . ." Continuing, section 21 provides, " . . . but *no provision of any franchise agreement shall limit or interfere with any power conferred on the commission* or the railroad commission by this Act." (Emphasis added).

In section 50(1) the Legislature again emphasized that a franchise to use public streets and alleys will not confer upon a utility the right to serve the public with electric service:

"No public utility may in any way *render service directly or indirectly to the public under any franchise or permit without first having obtained from the commission a certificate* that the present or future public convenience and necessity require or will require such installation, operation, or extension." (Emphasis added).

The bases for Southwestern's argument that its constitutional rights have been impaired appear to be grounded on erroneous assumptions that a utility's right to provide service is not subject to the state's police power and that a franchise from a city is a vested right to serve the public.

In seeking to escape the state's exercise of its police power, Southwestern relies upon *Texas Power and Light Company v. City of Garland,* 431 S.W.2d 511 (Tex.Sup. 1968), in which the Supreme Court struck down a city ordinance designed to curtail rights under an earlier franchise granted the utility by the city. The Court found certain sections of the ordinance void as an attempt to give the City of Garland, a competitor with the utility, an advantage over the public utility. The Court stated: "Essential franchise rights cannot be taken *under a pretense of regulation* designed to gain a competitive advantage to the *City acting in its proprietary capacity.* The City has *no right to barter with the police power.*" (Emphasis added). (431 S.W.2d 518, col. 1).

Remaining sections of the Garland ordinance, the Supreme Court stated, were provisions " . . . designed to prevent duplication of present or future City electrical systems, [and] are said to be within the City's police power." The Court added, "We hold that these three sections are void because they *do not state a reasonable standard* aimed at protecting the safety or welfare of the public. They in no way *control the City's exercise of discretion.*" (Emphasis added). (431 S.W.2d 518, col. 2). The Supreme Court concluded, "Without stating standards by which the City can govern the exercise of its discretion, Sections (b), (e) and (k) allow the City to arbitrarily exercise *its governmental power to exclude competition* in an undeveloped area. The three sections are void because they *do not provide adequate standards to govern the discretion of the City.*" (Emphasis added). (431 S.W.2d 519, cols. 1–2).

Entirely different from a municipality, employing its governmental prerogatives to gain advantage in its proprietary role over a competing utility, is the action of the Legislature in adopting a regulatory law requiring public utilities to meet stated standards to obtain certificates of public convenience and necessity before being allowed to serve a specified territory. In the present case the Commission denied South-

western's application because the certificate was not necessary for service, accommodation, convenience, or safety of the public under standards found in section 54 of the Act.

In *Garland* the Supreme Court found no standards provided in the ordinance. The basic standard in section 54 of the Regulatory Act is determination of whether ". . . the certificate is necessary for the service, accommodation, convenience, or safety of the public." (sec. 54(b)).

The Act also provides that:

"Certificates of convenience and necessity shall be granted on a nondiscriminatory basis *after consideration by the commission* of the adequacy of existing service, the need for additional service, the effect of the granting of a certificate on the recipient of the certificate and on any public utility of the same kind already serving the proximate area, and on such factors as community values, recreational and park areas, historical and aesthetic values, environmental integrity, and the probable improvement of service or lowering of cost to consumers in such area resulting from the granting of such certificate." (Emphasis added). (sec. 54(c)).

The basic standard alone, as quoted from section 54(b), supplies a standard heretofore held sufficient to govern action of an administrative body. The Supreme Court in 1960 held that ". . . the statutory standard—the promotion of the public convenience and advantage—being applicable and constitutionally sufficient for a definite standard," did not require the banking commissioner to promulgate rules and regulations in further elaboration. (See *Jordan*, p. 281, *post*). *Southwestern Savings and Loan Association of Houston v. Falkner*, 160 Tex. 417, 331 S.W.2d 917 (1960). Shortly thereafter the Supreme Court, in a case involving action of the State Board of Insurance, held that the term " 'not worthy of the public confidence' " under which the Legislature authorized the Board after investigation to refuse, or revoke, an insurance carrier's certificate of authority, was ". . . reasonably clear and hence ac-

ceptable as a standard of measurement. And in this lies the true constitutional test." *Jordan v. State Board of Insurance*, 160 Tex. 506, 334 S.W.2d 278, 280 (1960), citing and discussing *Falkner*. See also the Supreme Court's discussion of the holding in *Jordan* in *Key Western Life Ins. Co. v. State Board of Insurance*, 163 Tex. 11, 350 S.W.2d 839, 845 (1961).

■ We hold that the standards found in section 54(b) and (c) are adequate and meet the test recognized by the Supreme Court in *Falkner*, *Jordan*, and *Key Western*. The standards enumerated in section 54 hold a reasonable relationship to the Legislature's declared purpose for the Act in section 2 ". . . to protect the public interest inherent in the rates and services of public utilities."

■ As pointed out earlier, municipalities may grant franchises to utilities to use the public streets and alleys, but such franchises do not grant the right to engage in the sale of electricity to the public. *West Texas Utilities Company v. City of Baird, supra; Ennis Water Works v. City of Ennis, supra.*

Southwestern relies on and quotes from cases which we do not find in point. For in none of these cases do we find that where the franchise right is held impaired a right had been lawfully granted by a city to a public utility to serve the public. The franchise Southwestern obtained from the City of Lubbock could not have the effect of a grant to provide service to the public or to engage in the utility business in Lubbock, for, as the cases reviewed earlier hold, a municipality has no power to grant or deny such a right.

Because an attempted grant to a water company for a period of years "the right and privilege . . . of supplying the city . . . and the inhabitants thereof" was found to be an *exclusive* grant, the Supreme Court very early found the grant unconstitutional. *City of Brenham v. Brenham Water Company*, 67 Tex. 542, 4 S.W. 143 (1887). Even the grant to use the streets and alleys may not be made exclu-

sive without coming in conflict with the constitutional prohibition.

Southwestern's insistence that it somehow has a franchise right, granted by the City of Lubbock, which has been impaired in violation of the utility's constitutional rights, is found to be without merit, for the reasons already stated, and the contention is overruled.

■ Under its final point of error Southwestern attacks the corporate powers of South Plains under claim that South Plains is without authority "to continue and extend electrical service to new customers in the area annexed by the City of Lubbock" which the Commission in 1976 certificated to South Plains. The proceedings now under review were initiated by Southwestern through application to the Commission for a certificate to serve the 143 acres under dispute. From the Commission's order refusing the certificate, Southwestern appealed to district court and from the court's adverse judgment has appealed to this Court. The standing of South Plains is not an issue in this litigation, and Southwestern is in no position to raise the question of whether South Plains has acted in excess of its corporate authority.

The only interest Southwestern could have in South Plains' activities in the disputed territory, under a certificate granted by the Commission, is as a competitor. Whether a corporation has acted in excess of its lawful powers can be raised only by a party interested in the corporation or in a direct proceeding brought by the state. In the present case the attorney general, representing the Commission, has not challenged the right of South Plains to provide service within the annexed area.

Southwestern's lack of justiciable interest, under the facts of this case, to challenge the corporate powers of South Plains is clearly demonstrated under the well recognized rule stated in *English v. Landa Motor Lines*, 166 S.W.2d 721 (Tex.Civ.App. Austin 1942, writ ref'd w. o. m.); *West Texas Utilities Company v. Smith*, 168 S.W.2d 665 (Tex.Civ.App. Austin 1943, writ ref'd); *Lea County Electric Cooperative,*

*Inc. v. City of Plains*, 373 S.W.2d 90 (Tex. Civ.App. Amarillo 1963, writ ref'd n. r. e.); *Southwestern Gas and Electric Co. v. City of Gilmer*, 123 F.Supp. 11 (E.D.Tex.1954), aff'd 224 F.2d 794 (1955). The point of error is overruled.

■ We earlier referred to the position of the City of Lubbock, before the Commission and subsequently before the district court, that it was not "incumbent upon us [the City] to file an application" for a certificate to serve the disputed 143 acres. The Commission nevertheless granted a certificate to the City covering the 143 acres, an action set aside by the district court. The attorney general seeks to sustain the action of the Commission by pointing out matters coming to the attention of the Commission which constitute substantial evidence to support grant of the certificate.

The hearing before the Commission dealt with the application of Southwestern to serve the area, and no other application or request was pending in that proceeding. The City of Lubbock candidly conceded that the City did not "request a certificate."

The Legislature plainly set out the manner and course by which the Commission may grant a certificate of public convenience and necessity. Section 54 of the Act prescribes that "*When an application for a certificate* of public convenience and necessity *is filed,* the commission *shall give notice of such application* to interested parties and, if requested, shall fix a time and place for a hearing and *give notice of the hearing.*" (Emphasis added).

The same section continues with detailed statement of the criteria and "factors considered" by the Commission, and clearly contemplates a hearing at which all parties are advised of the application on file and its nature and contents. It is not contemplated that the Commission is authorized, by whim and without notice, to issue certificates of public convenience and necessity in the manner of handing out free passes to a ball game.

The statute calls for an application on file, notices by the Commission to all inter-

ested parties, a fixed time for hearing on the application so filed, followed by consideration of the elements enumerated in section 54(c), before the application on file be finally granted or denied. The district court correctly set aside the Commission's grant of a certificate to the City of Lubbock to serve the disputed 143 acres. The district judge was of the view that such action be without prejudice to the right of Lubbock later to make application for a certificate. We are in agreement with that conclusion.

Certain motions filed by South Plains, seeking to have struck specified cross points by the Commission and to obtain dismissal of appeal by the Commission, have been examined and considered and are hereby overruled.

The judgment of the district court, sustaining action of the Commission in denying Southwestern's application for a certificate to serve the 143 acres in dispute and setting aside the Commission's grant of a certificate to the City of Lubbock to serve the same area, was in all things proper and correct.

Judgment of the district court is affirmed.

Affirmed.