CITY OF NEW BRAUNFELS v. CITY OF
SAN ANTONIO et al.

No. 9713.

Court of Civil Appeals of Texas. Austin.

May 12, 1948.

Rehearing Denied June 23, 1948.

**818**

Schleyer & Bartram, H. A. Triesch and Frank B. Voigt, all of New Braunfels, and Martin, Moore & Brewster and Leo Brewster, all of Fort Worth, for appellant.

T. D. Cobbs, Jr., City Atty., of San Antonio, and W. L. Matthews, of San Antonio, for City of San Antonio.

W. S. Gideon, of Austin, for Lower Colorado River Authority.

E. M. Cape, of San Marcos, Tarlton Morrow of Houston and Alvin J. Wirtz, of Austin, for Guadalupe-Blanco River Authority.

Chapman & Cutler of Chicago, Ill., Seeligson, Cox, Patterson & Grant Trueheart, McMillan & Russell, all of San Antonio, and C. W. Trueheart, of San Antonio, for appellees Harris Trust & Savings Bank and Harold Eckhart.

HUGHES, Justice.

The principal litigants in this suit are the City of New Braunfels, appellant, who was the sole plaintiff in the trial court, and appellees, City of San Antonio, The San Antonio Public Service Company, hereafter designated SAPSCo., The Guadalupe-Blanco River Authority, and The Lower Colorado River Authority, the latter two being hereafter designated GBRA and LCRA, respectively. Other appellees will be named only as required.

The primary purpose of this suit is to cancel, or have declared void, all instruments by which the City of San Antonio acquired title to an electric generating plant located within the corporate limits of New Braunfels.

Appellant's pleadings contained a count in trespass to try title, but as to this feature of the case it is not here contended that appellant has any character of title to the properties involved.

Further allegations of appellant, in substance, are:

Prior to October 24, 1942, the electric generating plant, known as the Comal Power Plant, was located within its corporate limits and had been operated by the SAPS Co. for many years under a franchise originally issued by New Braunfels to Comal Power Company, a predecessor of SAPS Co. The electric utility properties of the SAPSCo. within the corporate limits of New Braunfels included not only the Comal Power Plant itself, located upon a forty-acre tract adjoining Landa Park, but also large switchyards, high voltage transmission lines, emanating from the plant and going in all directions across the public streets, and grounds and other territory of the city to points outside its limits, as well as other apparatus necessary to the generation and transmission of electricity and claims to the waters of the Comal Springs and Comal River and to a fifteen-foot strip from the margin of the water along each bank of said river from the plant site up the stream through Landa Park to the Comal Springs. On October 24, 1942, San Antonio purported to acquire all of the utility properties of the SAPSCo., except certain local distribution systems in cities other than San Antonio, and leased the portions of such utility properties in New Braunfels to the GBRA and LCRA for operation by them under the terms of such lease. The particular acts on the part of San Antonio and its subordinates, complained of in the petition, were the attempt by San Antonio to acquire ownership of the electric utility properties within the corporate limits of New Braunfels, the operation thereof by San Antonio, either by

itself or through its lessees, the extension by San Antonio of its electric lines into the corporate limits of New Braunfels, the use of the streets, alleys, and public grounds of New Braunfels, by San Antonio and its lessees, for the maintenance of electric poles, high voltage wires, and other electric apparatus, and the assertion of rights in and claims to the springs, waters, and a part of the bed and banks, of the Comal River within the corporate limits of New Braunfels.

The validity of these actions, together with all instruments executed and other things done in connection therewith, insofar as they related to these particular utility properties within the corporate limits of New Braunfels, was questioned on each of the following grounds:

1. San Antonio was expressly prohibited by the Constitution and statutes of this State from invading New Braunfels, a home rule city, for such purposes, and thereby encroaching upon and violating New Braunfels' right of local self-government, guaranteed it under the Home Rule Amendment, Vernon's Ann.St.Const. Art. 11, § 5, and statutes of this State.

2. San Antonio not only lacked authority under the law to go into the corporate limits of another home rule city for such purposes, but was expressly prohibited from so doing.

3. Such acts were contrary to the public policy of this State.

4. Such acts destroyed vested property rights of New Braunfels under which the plant was being operated, without compensation and due process of law, in violation of the Constitution of the United States and of Texas.

Appellant sought the following relief:

1. Decreeing void and illegal all claims of San Antonio, and of all other parties to this suit claiming by, through, or under that City, of any interest in or to any of the utility properties located within the corporate limits of New Braunfels, and in and to the Comal Springs, Comal River, its waters and banks, and decreeing void and illegal all acts and instruments attempting to create such claims insofar as they related to the properties in New Braunfels.

2. Granting an injunction restraining San Antonio and its subordinate claimants from doing any of the acts complained of, and from interfering with the exercise by New Braunfels of its governmental and municipal functions in connection with the Comal Plant and incident properties, including the Comal River, Comal Springs, and waters thereof within the limits of New Braunfels, and requiring the removal of all electrical equipment and apparatus from the streets.

3. Impressing upon the Comal Plant and its incident properties within the corporate limits of New Braunfels a trust arising by operation of law, for the use and benefit of New Braunfels.

4. Appointing a receiver with authority to take charge of and operate the Comal Plant and all incident properties claimed by San Antonio and its subordinates within the limits of New Braunfels, and to sell said utility properties at receiver's sale to New Braunfels, or in the alternative, to some purchaser not disqualified by law to operate the same within said city under proper franchise therefrom, the proceeds of such sale to be paid into the registry of the court and distributed under its direction.

·5. Requiring an accounting to New Braunfels of all monies that had come into the hands of San Antonio or its subordinate claimants through the operation of the Comal Plant.

6. Granting general legal and equitable relief.

As to appellees' answer it is only necessary to state that estoppel, the nature of which will be later discussed, was specially pleaded.

Trial without a jury resulted in a judgment that appellant take nothing by its suit and that GBRA recover on its cross-action the title to and possession of all properties described in appellant's petition, this recovery being without prejudice to the rights, titles and claims of all other appellees.

There are no findings of fact or conclusions of law.

The facts are undisputed and were, for the most part, before the Supreme Court in the case of Guadalupe-Blanco River Au-

thority v. City of San Antonio, 145 Tex. 611, 200 S.W.2d 989, to which opinion reference is here made.

We will, therefore, be brief in reviewing the background and history of this litigation and state only such facts as are necessary for disposition of the issues before us.

The land upon which the power plant is now located was originally owned by the Landa family of Comal County. As far back as the Civil War, the Landas had used the property for the purpose of developing water power, and conducting milling operations. About 1900, Harry Landa had improved and increased the water power development by the construction of an artificial channel which collected the waters of Comal Springs, located on his property, and conducted them to a dam where water wheels were situated.

In 1925, E. H. Kifer, general manager of SAPSCo. made extensive investigations for the purpose of determining the best location of a new generating plant needed by the company to supply its electric system and customers. The Landa site was selected because of its proximity to the City of San Antonio, the abundance of cool water and other economic factors.

On August 17, 1925, the Landas conveyed to the Comal Power Company, for a cash consideration of $600,000, portions of their Comal County properties, including the tract of land upon which the Comal Power Plant was built and is now located, certain railroad trackage, the old power plant, the electric distribution system serving the City of New Braunfels, riparian and water rights along and in the Comal River, together with the lands underlying Comal Springs and the Comal River, the artificial channel and a strip fifteen feet wide from the water's edge along the Spring, River and Channel; the Landas reserving certain easements and water rights.

The remainder of the Landa property was acquired by the City of New Braunfels by deed expressly providing that it was subject to the terms and easements contained in the Landa conveyance to the Comal Power Company.

The Comal Power was substantially complete by the end of 1926, and about January 1, 1927, delivery of electricity was commenced. High lines connecting the plant with the City of San Antonio were also placed in use about January 1, 1927. Since 1927 an additional line has been placed on one-line right of way and conductors installed so as to double the capacity of this line.

Since completion of the plant over 90 per cent of the domestic, commercial and industrial consumers, both in number connected with the company system and in amount of electricity consumed, were located within the City of San Antonio or within ten miles of its corporate limits. Approximately 3 per cent of the power produced by this plant is used within the City of New Braunfels.

The estimated population of San Antonio at the time of trial was 353,854, and of New Braunfels between ten and fifteen thousand.

The Comal Power Company, apparently an alter ego of SAPSCo., conveyed the properties acquired by it from the Landas, including the newly constructed Comal plant, to SAPSCo., January 1, 1928.

All of the stock of SAPSCo. was held by the American Light and Traction Company. In 1941, the Securities and Exchange Commission ordered this company to dispose of its interest in SAPSCo.

The City of San Antonio and GBRA both desired to acquire these interests. This rivalry resulted in the filing of many law suits, one of which was a condemnation suit instituted by the City of New Braunfels to condemn the properties of SAPSCo. located within New Braunfels. The City of San Antonio was made a party to this suit.

On October 24, 1942, all of these suits were dismissed, an agreement having been reached whereby the City of San Antonio acquired certain of the properties involved, including the Comal Power Plant, and GBRA was given a 30-year lease of this plant with an option to buy. This lease has, with the consent of the City of San Antonio, been assigned to LCRA. The details of these transactions are fully set out in the opinion of the Supreme Court, above referred to, in which the agreement

made was held valid as between the City of San Antonio and GBRA.

The electric distribution system within the City of New Braunfels, a portion of SAPSCo's. property, is now owned by the City of New Braunfels and the required power is obtained from the Comal plant by purchase from LCRA, the sub-lessee of the City of San Antonio. It is in connection with acquisition of this distribution system by New Braunfels that appellees base their plea of estoppel.

Preliminary to the facts to be stated as bearing on the issue of estoppel, we note that the Guadalupe Electric Company was a corporation set up for the purpose of holding title to the distribution systems in the cities of New Braunfels, Hondo and Boerne, with the understanding that it would, upon request, convey to each of the cities the distribution system within its limits at a stipulated price.

On September 4, 1942, the City of New Braunfels filed a condemnation suit against SAPSCo. in the County Court of Comal County, wherein it sought to condemn all of the property of SAPSCo. situated in the City of New Braunfels, including the distribution system, the Comal plant property, the office building, and all other property of the Company located in the City. On October 20, 1942, the City of New Braunfels filed a supplemental petition in the condemnation suit, making the City of San Antonio a party defendant, in which supplemental petition it alleged that it had ascertained, and alleged the fact to be, that the City of San Antonio was claiming and asserting some right, title or interest in and to the properties. At 9:20 o'clock on the morning of October 24, 1942, this condemnation suit was dismissed.

On the 24th day of October, 1942, the day the overall transaction was closed, the City of New Braunfels entered into an agreement with the Guadalupe Electric Company for the purchase by the City and sale by the Company of "all of the electric distribution properties heretofore owned by the San Antonio Public Service Company," in New Braunfels, including office buildings, automobile equipment and other property, which contract provided that the pur-chase should be completed on or before December 22, 1942, and specifically providing: "It is understood and agreed between the parties that the performance of this contract is conditioned upon, but only upon, the closing of a transaction whereby the City of San Antonio acquired the gas and electric properties now owned by San Antonio Public Service Company, in Bexar County, Texas, and surrounding territory, in connection with which transaction Seller is to acquire title to the municipal distribution property hereinabove described, and in which transaction the title to the property covered by the above mentioned option is to be acquired by the City of San Antonio, and the option hereinabove mentioned is to be granted by the City of San Antonio to the City of New Braunfels by an ordinance adopted by the City Commission of San Antonio, as a part of the closing of the entire purchase transaction." (The option referred to was an option to purchase rural lines adjacent to but outside the boundaries of the City of New Braunfels.)

While this contract was dated October 24, 1942, it was in fact authorized by an ordinance of the City Council of New Braunfels at a meeting held on October 19, 1942. The properties covered by the agreement were actually conveyed to the City of New Braunfels by Guadalupe Electric Company by instrument dated November 17, 1942.

The price paid by New Braunfels for the distribution system was about $100,000 less than the appraised value in the general appraisal of all the properties of SAPSCo.

New Braunfels pays no more for electric power produced by the Comal plant than San Antonio pays. Because there is no transmission charge, New Braunfels pays less for this power than do Hondo, Boerne, Floresville, Stockdale, and other towns who receive power from the Comal plant.

In 1945, New Braunfels made a net profit of $67,474.21 from the operation of its distribution system, after deducting $36,000 as the equivalent of taxes lost by the transfer of the Comal plant from private to public ownership; a profit of $64,915.94, after making a similar deduction, was made

in 1946. Other years during which New Braunfels has owned the distribution system have shown like profits.

It is also shown that the City of San Antonio executed an agreement with the City of New Braunfels, which agreement was in the form of an option giving the City of New Braunfels the right to purchase the rural lines adjacent to and outside the city limits of the City of New Braunfels, being the option referred to in the contract between New Braunfels and Guadalupe Electric Company, which option agreement was executed by both the City of San Antonio and the City of New Braunfels as of October 24, 1942, and which was approved by ordinance of the City Commission of the City of New Braunfels on April 7, 1943.

On April 22, 1943, the City of New Braunfels filed a suit against the City of San Antonio in the District Court of Comal County, Cause No. 3606, seeking to enforce this contract. Citation was issued and served, San Antonio filing a plea of privilege and New Braunfels filing a controverting plea, but no other action has been taken in the cause, the plea of privilege and controverting plea having been continued by agreement, and the cause is still pending.

The Supreme Court in the GBRA case, supra, has held that the matters concluded on the 24th day of October constituted one transaction. This being true there is no question but that the acquisition of the Comal plant by the City of San Antonio was an integral part of that transaction and that San Antonio could not be held to a performance of other provisions of the agreements, as between the parties thereto, if this portion of the overall contract is invalid.

New Braunfels was not a formal party to that overall transaction, yet its activities and conduct show that it was not in ignorance of what was transpiring. Whether New Braunfels was originally bound by the comprehensive transaction of October 24, 1942, we need not determine, because we are fully convinced that it became bound by subsequent events.

■ The overall transaction contemplated and was entered into upon the express understanding that New Braunfels was to be conveyed the local distribution system for a stipulated amount if it so requested. This then constituted New Braunfels a third party beneficiary of such transaction (contracts), and upon electing to accept under the provisions thereof, as it did, New Braunfels became bound by the terms and provisions of the overall transaction of which it had knowledge. Austin Bridge Co. v. Teague, 137 Tex. 119, 152 S. W.2d 1091.

■ Being or becoming bound by the overall transaction of October 24, 1942, it was incumbent upon appellant to return or offer to return the benefits which had accrued to it thereunder, in order to obtain equitable relief of the nature sought. Texas Employers Ins. Ass'n v. Kennedy, 135 Tex. 486, 143 S.W.2d 583.

■ Appellant's offer to do equity was couched in the following language: "In connection with all the relief prayed for in this petition, the plaintiff city asks that the court adjust the equities, and it offers to do equity by complying with any and all orders, requirements and directions of this conformable to the rules of law and equity and hereby tenders and offers to pay into the registry of this court in cash such sums of money as the court may finally determine to be proper and order to be paid under the rules of law and equity to entitle the plaintiff city to the relief sought herein, or plaintiff city will give such security for the payment of such money as the rules of law and equity may require in the adjustment of the equities between the parties."

This offer to do equity is very general. Appellant offered to do nothing except what the court might order it to do. This would be its obligation, be it willing or unwilling. No tender is made of the distribution system; no offer is made to return the profits made from its operation; no promise is given to dismiss the suit pending against the City of San Antonio to compel conveyance or rural lines; and no assurance is given that appellant is able, even if willing, to restore the status quo, it ap-

pearing that appellant has encumbered the distribution system, and there is no pleading or evidence that these creditors are willing to release their claims, nor that they could be compelled to do so.

When we consider that New Braunfels is realizing about $65,000 per year profit from the operation of the distribution system, over and above its tax loss, we are unwilling to construe its general offer to do equity as encompassing all or any of the matters above referred to, or as being legally sufficient. After all "the courts are not to determine arbitrarily what the equities are between the parties, but that question must be presented by proper pleadings, and the issue thus presented determined on proper evidence." 30 Corpus Juris Secundum, Equity, § 91, page 464.

The trial court was entitled to know what appellant was willing and able to do in order to obtain the relief sought. Especially is this true here where the relief sought is unusual in character, harsh in the extreme, and if granted would cause confusion, if not panic, among the parties to the contracts of October 24, 1942, cities who have purchased and operated portions of the properties involved, and investors who have advanced hundreds of thousands of dollars upon the assumed validity of the entire transaction.

That appellant was willing to repay a half million dollars in profit and give up its distribution system netting $100,000 per year, in order that the Comal plant be returned to private ownership and its taxable status restored, cannot be reasonably inferred from the pleadings or evidence.

■ Having construed appellant's pleading and the evidence as being insufficient to show an offer and the ability to restore the status quo, we find appellant here in the same position as that occupied by the City of San Antonio in the GBRA case, supra, where the court held: "The contract by which the City acquired the property is a very beneficial one to the City. Having accepted and retained the beneficial part of the contract, it cannot now reject the disadvantageous part by pleading the mere want of corporate power of the other party to enter into the contract." 200 S.W.2d 998.

The same authority makes the doctrine of estoppel applicable to appellant under the facts of this case.

We could, but will not, rest our decision here, and will undertake to dispose of other questions presented.

Does one Home Rule city (San Antonio) have the right to own an electric generating plant within the corporate limits of another Home Rule city (New Braunfels)?

Appellant says "No" for the following reasons:

(1) Such ownership would authorize San Antonio to encroach upon and violate New Braunfels' right of local self-government, including (a) its right to regulate public utilities; (b) its exclusive right of control over public streets, alleys and grounds; (c) its right to widen and improve creeks and rivers; (d) its right to levy and collect taxes; and (e) its right to exercise its police powers.

Upon such premise, appellant charges the City of San Antonio with invasion, the destructive effect of which has been graphically depicted.

Except as to the question of taxes, it is admitted that San Antonio has as yet done nothing to invade New Braunfels and has not threatened to do anything of the kind. It is the fear of what may happen that causes alarm.

Applicable to such a situation is the holding of the Supreme Court in City of Pelly v. Harris County Water C. & I. District, Tex.Civ.App., 198 S.W.2d 450, 454: "The two propositions last considered, as well as much of respondents' argument in support of other contentions, are based on the assumption that the City of Pelly will attempt to take over the annexed territory in utter disregard for respondents' constitutional and statutory powers and obligations and that, therefore, the annexation is void because both the city and the district cannot function harmoniously in the 'common orbit.' In the first place, we are not justified in assuming that the petitioners will make any such attempt. Rather we must assume that Pelly will proceed amicably in an effort

824

to adjust any conflicts by mutual agreement. But if it should not make that effort, or if accord cannot be reached by it and the district concerned, then it will become the province and duty of the court to adjudicate the differences. That is clearly the effect of Harris County Drainage Dist. No. 12 v. City of Houston et al., 35 S.W.2d 118, a Commission of Appeals opinion which had the express approval of this court. See also City of Breckenridge v. Stephens County, 120 Tex. 318, 40 S.W. 2d. 43."

Furthermore, the City of San Antonio disclaims any legal right to ever interfere with the legislative or governmental powers of the City of New Braunfels. The following excerpts are taken from its brief:

"Both the City of San Antonio and Lower Colorado River Authority took the position in the trial court that neither of them had any governmental authority or were vested with any police powers within the corporate limits of the City of New Braunfels."

"The City of New Braunfels makes the flat contention that any provisions of the statutes extending the legislative or police powers of other cities or state agencies into the corporate limits of the City of New Braunfels, would be unconstitutional and void, because in conflict with the Home Rule amendment to the State Constitution. In this latter contention the City of New Braunfels is undoubtedly correct, and being correct in this contention, it is necessarily wrong when it contends that either the City of San Antonio or Lower Colorado River Authority have or purport to have any legislative, governmental or police power within the boundaries of the City of New Braunfels with which the powers of the City of New Braunfels could in any way conflict.

"The 'invasion' constantly complained of in the brief is an invasion not by mere proprietary ownership of private property, but an invasion producing conflicts between governmental powers. Since no such conflict is shown by the record to have actually occurred in fact, the Court certainly

cannot assume that such a conflict will occur in the future, especially when such occurrence would come about in utter violation of and without the slightest support from the laws of the State."

"Under the law as announced both in the decisions of the Texas courts and the decisions of practically all other courts in the United States, the City of San Antonio, to the extent of its ownership of the Comal plant and appurtenant transmission lines, stands in the identical position of San Antonio Public Service Company, the predecessor private corporation, in every respect. The City of San Antonio, upon acquiring the property, has held it with only such rights as the private corporation had, and owing every duty owed by the private corporation."

" * * * As we have stated before, the City of San Antonio and Lower Colorado River Authority, being in New Braunfels solely in their proprietary capacity and engaged in proprietary activities, are subject to any ordinance that any private corporation under the same facts would be subject to."

"We repeat that any ordinance of the City of New Braunfels with reference to the property here in question which would be valid as against the San Antonio Public Service Company, as the owner and operator of the property, would be equally valid and enforcible against the City of San Antonio and Lower Colorado River Authority."

Surely it cannot be said that there exists any present controversey between appellant and the City of San Antonio with respect to the exercise by the City of New Braunfels of all its governmental powers unaffected by the ownership by San Antonio of the Comal plant; nor can it be said that any such future controversy is contemplated or threatened.

It is well settled that courts do not sit for the purpose of deciding abstract questions. 3 Tex.Jur., p. 68.[1]

We are, therefore, convinced that the questions presented as to the right of

---

[1] The Declaratory Judgment Act, Vernon's Ann.Civ.St. Art. 2524—1, is not involved in this suit.

the City of San Antonio to interfere with the power of local self-government of New Braunfels are in the abstract and that we are without authority to consider them.

Conceding such questions to be real, there is no justification for appellant's contention, despite San Antonio's insistence to the contrary, that San Antonio has or will have the right to interfere with the power of New Braunfels to govern itself. The very authorities cited by appellant plainly hold that no such right of interference exists. City of Houston v. City of Magnolia Park, 115 Tex. 101, 276 S.W. 685; City of Galena Park v. City of Houston, Tex.Civ.App.Galveston, 133 S.W.2d 162, writ of ref.; Dallas Power and Light Co. v. Carrington, Tex.Civ.App.Dallas, 245 S.W. 1046 writ dis.

Statutes such as Article 1108, Vernon's Ann.Civ.St., which provides that a city owning certain public utilities shall have the power and right to make rules and regulations and prescribe penalties concerning the same, and art. 1116, V.A.C.S., providing that a city may prescribe penalties for trespassing on or injuring any such public utility, must, in order to be constitutional, be construed as bestowing no power upon one home rule city to enact ordinances effective within the limits of another home rule city. City of Houston v. City of Magnolia Park, supra.

The one substantial complaint made by appellant is that San Antonio's ownership of the Comal plant results in the property being tax exempt. This is correct. Art. XI, Sec. 9, Texas Constitution, Vernon's Ann.St. A & M Consolidated Ind. School Dist. v. City of Bryan, 143 Tex. 348, 184 S.W.2d 914.

The Constitution having so provided, it is not within the power of the courts to grant relief to any taxing authority for loss of taxes involved. Many cities constantly lose tax revenues by the transfer of property from private to public ownership. The City of Austin is an excellent example. New Braunfels should be happy in the fact that through the wisdom, activity and business acumen of its governing body, it was able to convert its tax loss into a profit of more than $65,000 per year. No other taxing authority, to our knowledge, has been so fortunate.

The City of New Braunfels was in no way misled or deceived as to the tax matter, as is shown by the minutes of its City Commission on November 6, 1942, when certain amendments to the Electric Distribution System Trust Indenture were up for consideration. The amendments had to do with the authority of the Board of Trustees of the System to reimburse the City of New Braunfels, the New Braunfels Independent School District and the County of Comal for tax losses to be sustained in the transfer of properties of the San Antonio Public Service Company to public ownership. The Mayor voted "No" to the proposal, and gave as his reason the following: "In my opinion, this is strictly a business affair of the City of New Braunfels, and therefore, I, as Mayor, in my opinion, cannot act either for or against the New Braunfels Independent School District nor the County of Comal, nor do I want to discriminate against the State of Texas, which in this instance is affected in proportion in this tax loss."

As to the right of San Antonio to own an electric generating plant within the City of New Braunfels, we are cited to and have found no constitutional or statutory prohibition. Affirmatively, the city charter of San Antonio provides that the City shall have the power to:

" * * * take, hold, acquire and convey, lease and dispose of any property whatever in said city limits, and for sewer, sanitary, cemetery, and other corporate purposes, to acquire necessary property by purchase or condemnation within or without the city limits, and to lease, convey and alien the same when no longer required."

Art. 1175, V.A.C.S., provides:

"Cities adopting the charter or amendment hereunder shall have full power of local self-government, and among the other powers that may be exercised by any such city the following are hereby enumerated for greater certainty: * * *

"13. To buy, own, construct within or without the city limits and to maintain and operate a system or systems, of gas, or

electric lighting plant, telephone, street railway, sewerage plants, fertilizing plants, abattoir, municipal railway terminals, docks, wharfs, ferries, ferry landings, loading and unloading devices and shipping facilities, or any other public service or public utility."

Art. 1108, V.A.C.S., provides:

"Any town or city in this State which has or may be chartered or organized under the general laws of Texas, or by special Act or charter, and which owns or operates waterworks, sewers, gas or electric lights, shall have the power and right:

"1. To own land for such purposes within or without the limits of such town or city.

"2. To purchase, construct and operate water, sewer and gas and electric light systems inside or outside of such towns or city limits, and regulate and control same in a manner to protect the interests of such town or city.

"3. To extend the lines of such system outside of the limits of such towns or cities and to sell water, sewer, gas, and electric light and power privileges or service to any person or corporation outside of the limits of such towns or cities, or permit them to connect therewith under contract with such town or city under such terms and conditions as may appear to be for the best interest of such town or city; provided that no electric lines shall, for the purposes stated in this section, be extended into the corporate limits of another incorporated town or city. (As amended in 1937.)

"4. To prescribe the kind of water or gas mains or sewer pipes and electric appliances within or beyond the limits of such town or city, and to inspect the same and require them to be kept in good order and condition at all times and to make such rules and regulations and prescribe penalties concerning same, as shall be necessary and proper."

No Texas cases directly in point are cited.

In City of Dallas v. State, Tex.Civ.App. Fort Worth, 28 S.W.2d 937 writ ref., it was held that a water reservoir owned by the City of Dallas in Denton County was exempt from taxation, thus sustaining the right of Dallas to own such property.

A similar holding was made in City of Abilene v. State, Tex.Civ.App.Eastland, 113 S.W.2d 631 writ dis.

In A & M Consolidated School District v. Bryan, supra, the City of Bryan owned and operated a rural electrification system, with lines in Brazos, Burleson and Robertson Counties, outside the City of Bryan, furnishing electric power to surrounding rural territory and to at least one incorporated town. This property was held exempt from taxation.

Appellant cites and relies upon Central States Electric Co. v. Incorporated Town of Randall, 230 Iowa 376, 297 N.W. 804, and Long v. Town of Thatcher, 62 Ariz. 55, 153 P.2d 153, 157.

In the Iowa case the court held, under the statutes of that State, that one town could not grant to another town a franchise to construct and operate and electric distribution system within the first town.

In the Arizona case the town of Thatcher made a contract with a utility corporation to purchase its properties consisting of an electric power plant and distribution lines, 10% of which were located in Thatcher and the rest principally in the town of Stafford, where the power plant was located. The sale was enjoined, notwithstanding the provision of a statute which provided that a municipality should have the power to acquire any utility undertaking "within or without its corporate limits." Code Ariz. 1939, § 16-2603. This language was held not to give a city "the power to invade the corporate limits of another municipality, but limits its operators to its own territory not within the limits of another incorporated town already furnishing light and power to its inhabitants."

If this case is distinguishable, it is upon the grounds that a local distribution system was involved in the purchase there sought to be made; that the utility corporation operated under a certificate of convenience and necessity granted by the Arizona corporations commission and not under franchises granted by either of the two towns; the enforcement of the contract was immediately attacked in court and the town

of Stafford in no way ratified the contract or accepted any benefits under it; and, because of differences in our statutes, now to be discussed.

Our statute (art. 1108, V.A.C.S.), after providing in Secs. 1 and 2 that cities may own land within or without the limits of the city for the purpose of operating an electric light system and may purchase such a system within or without the city specially provides in Sec. 3 that the lines of such system may be extended and electricity sold outside of the city, "provided that no electric lines shall, for the purpose stated in this section, be extended into the corporate limits of another incorporated town or city." No similar statutory provision is noted in the Arizona decision.

Sec. 3 clearly means that one city may not extend its electric lines into another city for the purpose of selling electricity therein. This is a limitation, and the only limitation made upon the right of a city to own an electric light system. It is a locative limitation when the purpose is to sell electricity. The inclusion of this specific limitation in the statute excludes, in our opinion, and under well settled rules of statutory construction, any further limitation upon the broad and general language, "within or without the limits" of a city or town. Federal Crude Oil Co. v. Yount Lee Oil Co., 122 Tex. 21, 52 S.W.2d 56.

No electric lines owned by San Antonio extend into the City of New Braunfels for the purpose of selling electricity therein. Transmission lines run from the Comal plant to points outside the city, which fact does not violate the statute.

Many other questions are raised and discussed by appellant concerning the rights, duties and powers of New Braunfels as a Home Rule city and the possible interference therewith by the City of San Antonio, such as its right to prohibit or regulate the use of its streets by any electric light company, its privilege of granting franchise for such purpose, and to charge compensation therefor, the power to control utilities, regulate their rates, the kind of service to be furnished, the power to require extentions and other municipal powers and duties. Great stress is also made of the possibility that San Antonio will some day appropriate all of the power produced by the Comal plant to the ruination of the City of New Braunfels.

We do not feel it is our duty, or even appropriate for us, to undertake, were we qualified, to write a treatise upon municipal law which would settle, in futuro, all controversies which may arise between these two cities. We, of course, do not know, if any further dispute will occur, but we do believe we are safe in prophesying that not all of the imaginary conflicts will develop.

We repeat our holding that the City of San Antonio has no lawful right to interfere with or encroach upon any constitutional or statutory power or duty belonging to the City of New Braunfels. Should it attempt to do so, the courts will be open to grant redress.

This record reflects a most efficient use of pre-trial procedure by the trial court and all counsel, and we wish to commend them for taking advantage of its benefits.

The judgment of the trial court is affirmed.

Affirmed.