The CITY OF LUBBOCK, Texas, Appellant,

v.

SOUTH PLAINS ELECTRIC COOPERATIVE, INC., Appellee.

No. 9014.

Court of Civil Appeals of Texas, Amarillo.

Dec. 31, 1979.

Rehearing Denied Jan. 30, 1980.

John C. Ross, Jr., City Atty., James P. Brewster, Civil Trial Atty., Lubbock, for appellant.

McGinnis, Lochridge & Kilgore, B. D. St. Clair, Austin, McWhorter, Cobb & Johnson, Dale H. Johnson, Lubbock, for appellee.

DODSON, Justice.

In this appeal, we determine, *inter alia,* that section 50(2) of the Texas Public Utility Regulatory Act[1] precludes a home rule municipality from furnishing, making available, rendering or extending retail electric service to any area lawfully served by another retail public utility without first obtaining a certificate of public convenience and necessity from the Texas Public Utility Commission.

The City of Lubbock, a home rule municipality, owns and operates a municipal electric system which provides electric service to areas within and beyond its city limits. On or about 11 August 1977, the City annexed some 900 acres of land situated adjacent to and southwest of its city limits. South Plains Electric Cooperative, Inc., provides and furnishes retail electric service to the annexed area by virtue of a certificate of public convenience and necessity issued by the Texas Public Utility Commission. South Plains has furnished electric service to the area since 1938 and was the only retail electric public utility furnishing electric service to the area during the period from 1 September 1975 to 16 September 1978, which is a significant operative time under the Act.

In April of 1978, the City began construction and undertook other action to extend its electric system to the annexed area for the purpose of furnishing and providing retail electric service and to provide electric service to its own facilities in the area.[2] The record before us does not reflect that the City has obtained certificate of public convenience and necessity authority from the Texas Public Utility Commission to provide retail electric services to the area.

South Plains instituted this action to enjoin the City from furnishing, making available, rendering or extending retail electric public service to the area in question without first obtaining a certificate of public convenience and necessity from the Public Utility Commission. After a bench trial, the court granted the requested injunction. The City appeals from the order granting the injunction. We affirm.

I

The City maintains that it may provide retail electric services to the area without first obtaining a certificate of public convenience and necessity from the Texas Public Utility Commission. We do not agree.

---

1. All references to the Act are to the Texas Public Utility Regulatory Act, Tex.Rev.Civ.Stat. Ann. art. 1446c (Vernon Supp.1963–1978), unless otherwise noted.

2. South Plains does not contend that the City is precluded from providing electric services to its own facilities in the area, such as street lights and fire stations, and the court does not attempt to preclude such services in the injunction.

In article VII of the Act, the legislature delegates to the Public Utility Commission the power to issue public convenience and necessity authority to certain "retail public utilities," under the prescribed conditions. Section 49, article VII of the Act defines a "retail public utility" as "any person, corporation, water supply or sewer service corporation, *municipality*, political subdivision or agency, or cooperative corporation, now or hereafter operating, maintaining, or controlling in Texas facilities for providing retail utility service." Section 50, article VII of the Act provides in part:

Sec. 50. Beginning one year after the effective date of this Act, unless otherwise specified:

(2) Except as otherwise provided in this article no retail public utility may furnish, make available, render, or extend retail public utility service to any area to which retail utility service is being lawfully furnished by another retail public utility on or after the effective date of this Act, without first having obtained a certificate of public convenience and necessity that includes the area in which the consuming facility is located.

■ The effect of section 50(2) is to preclude, *inter alia*, municipal retail electric public utilities, from providing retail electric service to any area which is lawfully served by another retail electric public utility without first obtaining a certificate of public convenience and necessity from the Public Utility. Commission.

We reiterate, that in the case before us, the uncontroverted evidence shows that South Plains was providing retail electric service to the area before the enactment of the Texas Public Utility Regulatory Act; that South Plains, has complied with the certification provisions of the Act by obtaining a certificate of public convenience and necessity to provide a retail electric service to the area; and that the City has obtained no such authority from the Public Utility Commission. Nevertheless, the City advances several arguments in support of its position.

The City says that under the overall plan of regulation, utilities are subject to the original jurisdiction of the Public Utility Commission with respect to operation outside of the cities,[3] and to the exclusive original jurisdiction of cities which have not surrendered such jurisdiction with respect to operations within the cities.[4] Thus, the City reasons that having not surrendered its jurisdiction and having annexed the questioned area the Public Utilities Commission has no certification jurisdiction over the questioned annexed area. We do not agree.

■ The power to regulate any utilities rests solely with the legislature. The City has only the regulatory authority delegated to it by the legislature. In article VII of the Act, the legislature granted and reserved to the Public Utility Commission the "exclusive original jurisdiction to grant or deny certificates of public convenience and necessity for any area in which the facility consuming the utility service is located." *Southwestern Public Service, Etc. v. Public Utility*, 578 S.W.2d 507, 511 (Tex. Civ.App.—Austin 1979, writ ref'd n.r.e.); see Tex.Rev.Civ.Stat.Ann. art. 1446c, § 50 (Vernon Supp.1963–1978). The authority to grant or deny certificates of public convenience and necessity is a separate, distinct and different jurisdictional power than the authority granted the City by the Act.

■ Moreover, we point out that the City's original jurisdiction is prescribed in article III of the Act. Section 20 of this article provides:

Sec. 20. Nothing in this *article* shall be construed to confer on the commission or railroad commission power or jurisdiction to regulate or supervise the rates or service of any utility owned and operated by any municipality within its boundaries either directly or through a municipally owned corporation, or to affect or limit the power, jurisdiction, or duties of the municipalities that have elected to regu-

3. Tex.Rev.Civ.Stat.Ann. art. 1446c, §§ 16, 17(a) (Vernon Supp.1963–1978).

4. *Id.* § 17(a).

late and supervise public utilities within their boundaries, *except as provided in this Act* (emphasis added).

Sections 49(a) and 50(2) of the Act provide one of the exceptions, and Sections 26(c) and 27 of the Act provide other exceptions.

■ The City further maintains, that being a home rule municipality, it has the authority under sections 13 and 14 of article 1175 of the Texas Revised Civil Statutes Annotated to provide retail electric service to the annexed area notwithstanding the provisions of article VII of the Act. Again, we do not agree. We acknowledge that sections 13 and 14 of article 1175, as well as article 1108 of the Texas Revised Civil Statutes Annotated, permit home rule municipalities to provide retail electric services to areas within and beyond their city limits. *See City of New Braunfels v. City of San Antonio,* 212 S.W.2d 817, 825–26 (Tex.Civ. App.—Austin 1948, writ ref'd n.r.e.). Nevertheless, this legislative authority is subject to and may be limited by subsequent general legislation. *Lower Colorado River Authority v. City of San Marcos,* 523 S.W.2d 641 (Tex.1975); *City of Beaumont v. Fall,* 116 Tex. 314, 291 S.W. 202 (1927); *Dry v. Davidson,* 115 S.W.2d 689 (Tex.Civ.App. —Galveston 1938, writ ref'd). In *Lower Colorado River Authority, supra,* at 645, the court said:

A limitation on the power of home rule cities by general law or by charter may be either an express limitation or one arising by implication. "Such a limitation will not be implied, however, unless the provisions of the general law or of the charter are clear and compelling to that end." *Glass v. Smith,* 150 Tex. 632, 244 S.W.2d 645. The intention of the Legislature to impose such limitations must "appear with unmistakable clarity."

We are persuaded that the legislature clearly and unmistakably intended to impose the provisions of Section 50(2) on municipalities.

■ Lastly, the City argues that the Act is defective because its caption does not comply with the "expressed subject" requirement of article III, section 35 of the Texas Constitution. We do not agree. The caption states "An Act defining public utilities and providing for their regulation; providing for the creation of the Texas Public Utility Commission . . . ; prescribing the duties and powers of the commissioners and the commission . . . ; providing for territories and services." We deem the caption sufficient to express the subject matter of the legislation. Moreover, the City did not plead any alleged defects in the caption of the Act nor did it raise the matter in the trial court; therefore, the matter is not properly before us. *See Houston Chronicle Publishing Co. v. City of Houston,* 531 S.W.2d 177, 183 (Tex.Civ.App. —Houston [14th Dist.] 1975), *writ ref'd n.r.e.,* 536 S.W.2d 559 (Tex.1976).

## II

The City attacks the injunctions on additional grounds. In this connection, the City says the trial court erroneously found that South Plains had no adequate remedy at law, had no administrative remedies available to it, and would suffer irreparable injury. It challenges the legal and factual sufficiency of the evidence to support the irreparable injury finding.

■ The sanction and enforcement provisions of the Act are contained in article XI. Sections 71 through 77 of this article prescribe violations of the statute and the commission's rules or orders. These sections are applicable only to "a public utility or any other person or corporation." As such terms are defined within the Act, the City of Lubbock is not a public utility, a person, or a corporation. *See* Tex.Rev.Civ. Stat.Ann. art. 1446c, §§ 3(a), 3(b), 3(c), 3(m) & 3(o) (Vernon Supp.1963–1978). Accordingly, the trial court correctly found that under the Act, South Plains has no administrative remedy or action at law.

The Texas courts, however, have consistently granted injunctive relief to protect the integrity of certificates of public convenience and necessity issued by a regulatory commission acting under legislative authority. *See Villalobos v. Holguin,* 146 Tex. 474, 208 S.W.2d 871, 875 (1948); *Missouri Pacific*

*Truck Lines, Inc. v. Brown Express, Inc.,* 399 S.W.2d 430, 432 (Tex.Civ.App.—Fort Worth 1966, writ ref'd n.r.e.). In *Missouri Pacific,* when addressing the irreparable injury issue, the court stated:

On the issue of whether plaintiffs have discharged the burden, applicable to relief by way of injunction, of showing irreparable injury should such relief be denied them it is sufficient to note that injury to their business would be a necessary consequence of unlawful competition by the defendant, and that such injury is of necessity one which could not be ascertained with certainty. Their burden was discharged.

*Missouri Pacific Truck Lines, Inc. v. Brown Express, Inc.,* supra, at 432.

 In deciding the legal sufficiency question, we must "consider only the evidence and the inferences tending to support the finding and disregard all evidence and inferences to the contrary." *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex.1965). If there is any evidence of probative force to support the challenged finding then we must overrule the challenge and sustain the court's finding on the issue. *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661–62 (1951). The uncontroverted evidence shows that South Plains will suffer a loss of revenue from retail electric customers served by the City. By the City's projections, it expects to serve 46 percent of the retail market. The evidence also shows the presence of the usual attributes which are inherent in the construction and operation of competing electric utilities, such as constructing and maintaining a system capable of rendering total service to an area which in fact will likely operate at approximately one-half capacity. Under these circumstances we conclude that the probative evidence supports the irreparable injury finding.

In deciding the factual sufficiency question we must consider and weigh all the evidence in support of and contrary to the challenged finding to determine if the finding is so against the great weight and preponderance of the evidence as to be manifestly wrong or unjust. *Traylor v. Goulding,* 497 S.W.2d 944, 945 (Tex.1973); *Garza v. Alviar, supra,* at 823; *In re King's Estate, supra,* 150 Tex. at 661–62, 244 S.W.2d 660. Having so considered and weighed all of the evidence, we conclude that the court's finding of irreparable injury is not so against the great weight and preponderance of the evidence as to be manifestly wrong or unjust.

In summary, we overrule the City's points of error. Accordingly, the judgment is affirmed.