

# THE ATTORNEY GENERAL
## OF TEXAS

October 28, 1986

JIM MATTOX
ATTORNEY GENERAL

Ms. Peggy Rosson
Chairman
Public Utility Commission
    of Texas
7800 Shoal Creek Blvd.
Suite 400N
Austin, Texas   78757

Opinion No.   JM-571

Re:  Whether a municipality is re-
quired by section 16 of article
1446c, the Public Utility Regula-
tory Act, to file a ten-year fore-
cast for assessments of land re-
sources for its service area

Dear Ms. Rosson:

You ask the following questions:

>    1.  Are  municipalities  required  by  section
> 16(c) of the Public Utility Regulatory Act to file
> a ten year forecast for assessments of load and
> resources for their service areas?
>
>    2.  If the answer to the first question is in
> the affirmative, what remedies are available for
> the failure of a municipality to file such a ten
> year forecast?

The Public Utility Regulatory Act (hereinafter PURA or the Act),
article 1446c, V.T.C.S., establishes a comprehensive regulatory system
over the rates, services, and operations of public utilities. City of
Sherman v. Public Utility Commission of Texas, 643 S.W.2d 681, 683
(Tex. 1983).  Prior to passage of the Act, Texas' municipalities
played a major role in the regulation of public utilities.  Id.  In
response to municipalities' concerns over state-wide regulation, the
legislature retained municipal regulation within municipal boundaries,
see art. 1446c, §§17, 21, 22, and exempted municipally-owned utilities
from many of the Act's general regulatory provisions.  See art. 1446c,
§§3(c),  17(e).   Because  of  these  exemptions  and  because  of  the
complexity of the Act, determining which provisions of the Act apply
to municipalities can be difficult.

The section of the Act about which you inquire, section 16(c),
provides, in part:

> Every generating electric utility in the state
> shall prepare and transmit to the commission by
> December 31, 198:, and every two years thereafter
> a report specifying at least a 10-year forecast
> for assessments of load and resources for its
> service area. The report shall include a list of
> facilities which will be required to supply
> electric power during the forecast periods. The
> report shall be in a form prescribed by the
> commission. (Emphasis added).

V.T.C.S. art. 1446, §16(c). Your request requires a determination of whether "generating electric utility" includes municipal utilities.

Although no inflexible rule governs the construction of statutes, the dominant principle is to give effect to the intent of the legislature. City of Sherman v. Public Utility Commission of Texas, 643 S.W.2d at 684. The language of the statute is the primary guideline in determining legislative intent. Id. When the language of a statute is ambiguous, however, the courts consider the history of the subject matter, the purposes to be accomplished, the problems to be remedied, and the results to be obtained. Id.

By its terms, section 16(c) applies to all "generating electric utilities." The Act, in section 3(c), defines the terms "public utility" and "utility" to exclude municipal utilities:

> The term 'public utility' or 'utility,' when
> used in this Act, includes any person, corpora-
> tion, river authority, cooperative corporation, or
> any combination thereof, other than a municipal
> corporation or a water supply or sewer service
> corporation. . . . (Emphasis added).

If section 16(c) is dependent on this section for meaning, section 16(c) cannot apply to municipally-owned utilities. The scope and purpose of section 16(c), however, prevent such a superficial analysis of the question at hand. Because section 16(c) refers specifically to a "generating electric utility" rather than simply to a "public utility" or "utility," the section is ambiguous. Accordingly, analysis of section 16(c) cannot rest on its language alone.

Arguably, if the legislature intended section 16(c) to apply to municipally-owned utilities, it would have expressly included munici- palities. See, e.g., art. 1446c, §27(f). Several Texas courts, how- ever, have held that municipalities are covered by provisions of the Act which do not refer expressly to municipalities. See, e.g., City of Coahoma v. Public Utility Commission of Texas, 626 S.W.2d 488 (Tex. 1981); San Antonio Independent School District v. City of San Antonio,

614 S.W.2d 917 (Tex. Civ. App. - Eastland 1981, writ ref'd n.r.e.), cert. denied, 106 S. Ct. 347; City of Lubbock v. South Plains Electric Cooperative, Inc., 593 S.W.2d 138 (Tex. Civ. App. - Amarillo 1979, writ ref'd n.r.e.); Southwestern Public Service Company v. Public Utility Commission of Texas, 578 S.W.2d 507 (Tex. Civ. App. - Austin 1979, writ ref'd n.r.e.); see also Attorney General Opinion JM-353 (1985). In these cases, the courts refused a blind application of the exclusionary definition in section 3(c). For example, in San Antonio Independent School District v. City of San Antonio, the court addressed the scope of section 48 of the Act, a section which deals with "payments made in lieu of taxes by a public utility to a municipality by which it is owned. . . ." (Emphasis added). A strict application of the section 3(c) definition of "public utility" would render section 48 meaningless. The court held that section 48 does not depend on section 3(c) for meaning and that section 48 clearly applies to municipally-owned utilities. 614 S.W.2d at 919.

The cases which discuss the applicability to municipalities of the Act's provisions regarding certificates of public convenience and necessity are of particular importance in determining the scope of section 16(c). Section 16(c) influences the factors considered in section 54(c), regarding certification proceedings. See V.T.C.S. art. 1446c, §16(f). It is now well-established that municipalities must comply with section 50(2) of the Act, a section which requires "retail public utilities" to obtain certificates of public convenience and necessity prior to extending service to an area served by another retail public utility. City of Lubbock v. South Plains Electric Cooperative, Inc., 593 S.W.2d at 141-42; Southwestern Public Service Company v. Public Utility Commission of Texas, 578 S.W.2d at 510-11; see also Public Utility Commission of Texas v. South Plains Electric Cooperative, Inc., 635 S.W.2d 954, 956-57 (Tex. App. - Austin 1982, writ ref'd n.r.e.); City of Brownsville v. Public Utility Commission of Texas, 616 S.W.2d 402 (Tex. Civ. App. - Texarkana 1981, writ ref'd n.r.e.).

In City of Lubbock v. South Plains Electric Cooperative, Inc., the court noted that section 49 of the Act carves out a separate definition for "retail public utility" which expressly includes municipalities. Section 50(2) refers to retail public utilities but fails to expressly include municipalities. Application of the section 3(c) definition to section 50(2) would result in the exclusion of municipalities. The court applied the section 49 definition rather than the section 3(c) definition and held that municipalities must comply with section 50(2). 593 S.W.2d at 141-42. Section 16(c) is similar to section 50(2) in that section 16(c) applies to a specific category of utilities -- "generating electric utilities." Although this phrase is not defined separately in the Act, as is the phrase "retail public utilities," a similar construction should apply. See Attorney General Opinion JM-353 (1985).

In determining whether section 50(2) applies to municipalities, the City of Lubbock court also focused on whether the certification process impinged upon the powers granted to municipalities under the Act. See art. 1446c, §§17(a), 21, 22. The court emphasized that

> [t]he authority to grant or deny certificates of public convenience and necessity is a separate, distinct and different jurisdictional power than the authority granted the City by the Act.

593 S.W.2d at 141. Similarly, in Southwestern Public Service Company v. Public Utility Commission of Texas, 578 S.W.2d at 511, the court emphasized that the original jurisdiction granted to municipalities under section 17(a) is "[s]ubject to the limitations imposed in this Act." 578 S.W.2d at 511; cf. City of Sherman v. Public Utility Commission of Texas, supra, at 684-85 (section 17(e) should not be construed to negate section 17(a)). Implicit in these two court of appeals decisions is the conclusion that section 3(c) excludes municipalities only in recognition of, and only to the extent of, municipal powers granted elsewhere in the Act. It must be remembered that section 3(c) is a definitional provision -- an aid to statutory construction -- not a grant of power. Cf. Hardin Water Supply Corporation v. City of Hardin, 671 S.W.2d 505 (Tex. 1984) (construed section 3(c) as a limit on section 17(a) jurisdiction over a water company because sections 3(c), 3(c)(4), and 3(u) remove water supply corporations from definition of utilities).

In City of Coahoma v. Public Utility Commission of Texas, 626 S.W.2d 488 (Tex. 1981), the Texas Supreme Court relied primarily on legislative intent in refusing to apply section 3(c) to section 53 of the Act. Section 53 is the "grandfather clause" for certificates of convenience and necessity. By its terms, section 53 applies only to "public utilities." Because municipalities must comply with section 50(2), however, it would be intrinsically unfair to deny them the protection of section 53. In light of the overall purpose of the certificate provisions of the Act, the court concluded that the legislature could not have intended to deprive "cities of the protection from encroachment afforded to public utilities under the Act." 626 S.W.2d at 491.

These decisions focus on two things: (1) whether the legislature intended the provision in question to apply to municipalities and (2) how application of the particular provision would affect the limited regulatory powers granted to municipalities by the Act. Applying these standards to section 16(c) compels the conclusion that the Texas courts would hold that section 16(c) applies to municipalities. As indicated, section 16(c) is vital to certification proceedings. See art. 1446c, §16(f); see also §§54(d), 54(e). It would be exceedingly difficult to develop a long-term statewide electrical

energy forecast, as required by section 16(b) of the Act, without the inclusion of all electric service areas in the state. Moreover, application of section 16(c) to municipalities in no way interferes with the powers granted to municipalities under the Act.

You also ask what remedies are available to the Public Utility Commission to enforce section 16(c). Article XI (sections 71 through 77), of the Act contains the Act's enforcement provisions. In City of Lubbock v. South Plains Electric Cooperative, Inc., 593 S.W.2d at 142, the court held that

> [t]hese sections are applicable only to 'a public utility or any other person or corporation.' As such terms are defined within the Act, the City of Lubbock is not a public utility, a person, or a corporation. [Citations omitted.] Accordingly, the trial court correctly found that under the Act, South Plains has no administrative remedy or action at law. (Emphasis added).

Unlike section 16(c), these sections do not create a separate category of entities affected. Nevertheless, the court noted that injunctive relief is available "to protect the integrity of certificates of public convenience and necessity issued by a regulatory commission acting under legislative authority." 593 S.W.2d at 142. Accordingly, the commission could seek injunctive relief to enforce section 16(c). The commission may not, however, impose administrative sanctions under sections 71 through 77 of the Act without legislative action to include municipalities within those sections.

## S U M M A R Y

Section 16(c) of article 1446c, the Public Utility Regulatory Act, applies to municipalities. The Public Utility Commission, however, lacks the authority to impose administrative sanctions to enforce section 16(c). The commission may seek injunctive relief from the courts.

Very truly yours,

JIM MATTOX
Attorney General of Texas

JACK HIGHTOWER
First Assistant Attorney General

MARY KELLER
Executive Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Jennifer Riggs
Assistant Attorney General

RQ-807

JM-

INDEX HEADINGS -- J.R. DRAFT

ADMINISTRATIVE LAW

CITIES AND TOWNS

ENERGY

POLITICAL SUBDIVISIONS

PUBLIC UTILITIES

REMEDIES

STATE BOARDS, COMMISSIONS, ETC.
    PUBLIC UTILITY COMMISSION

STATUTORY CONSTRUCTION

UTILITIES